## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YASMANI GURRI RUBIO,

    *Plaintiff*,

  v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

Civil Action No. 23-719 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

  Plaintiff Yasmani Gurri Rubio, proceeding *pro se*, commenced this action against the District of Columbia Department of Human Services ("DHS") on March 16, 2023, alleging that the agency acted unlawfully when it "canceled and violated [his] health insurance policy without issuing prior notice" and when it denied Plaintiff "emergency medical coverage for prescription drugs," following Plaintiff's exposure to the human immunodeficiency virus ("HIV"). Dkt. 1 at 1, 5 (Compl.). Seven months later, Plaintiff amended his complaint, dropping DHS as a named party and adding as defendants the District of Columbia and three official capacity defendants: D.C. Mayor Muriel Bowser, Laura Green Zeilinger, Director of DHS, and Wayne Turnage, Director of the D.C. Department of Health Care Finance. Dkt. 13-2 at 2–3 (FAC). Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 by, among other things, cancelling his "medical coverage" without providing him with the due process required by the Fifth

Amendment to the Constitution.  *Id.* at 3–4 (FAC).[1]  He seeks roughly $128 million in damages.  *Id.* at 5 (FAC).  To date, only the District of Columbia has appeared.[2]

Now before the Court is the District's motion to dismiss, Dkt. 22, as well as Plaintiff's motion for summary judgment, Dkt. 26, motion for a hearing on summary judgment, Dkt. 35, motion for leave to file a second amended complaint, Dkt. 38, and motion for recusal, Dkt. 42.  For the reasons that follow, the Court will **GRANT** the District's motion to dismiss, Dkt. 22, without prejudice and will appoint counsel to represent Plaintiff in this matter going forward.  Given that posture, the Court will **DENY** Plaintiff's motion for leave to file a second amended complaint, Dkt. 38, without prejudice.  The Court will **DENY** Plaintiff's motion for summary judgment, Dkt. 26, and motion for a hearing on summary judgment, Dkt. 35, without prejudice.  Finally, the Court will **DENY** Plaintiff's motion for recusal, Dkt. 42.

## I. BACKGROUND

### A.   Factual Background

For purposes of resolving the District's pending motion to dismiss, the Court will accept Plaintiff's factual allegations as true, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), and will consider those allegations along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).  In addition, because Plaintiff is currently proceeding *pro se*, the Court will also consider

---

[1] Plaintiff also alleges that Defendants violated § 1983 by failing to comply with "Title XIX of the Social Security, District of Columbia law, Obstruction of Justice, § 400.1 [C]uban/[H]aiti program, § 45 CFR-Public Welf[]ar[e], § 402.12, § 400.22, § 1002.210 Autoridad General, Public L 96-442, 94 status (8 U.S.C.)."  Dkt. 13-2 at 3 (FAC).

[2] Proof of service as to the official capacity Defendants has not been docketed.

other documents that he has filed in the case, *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789
F.3d 146, 152 (D.C. Cir. 2015) (per curiam), although his complaint must still "contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ho v.
Garland*, 2024 WL 3260764, at *2 (D.C. Cir. July 2, 2024) (internal citations and quotation
marks omitted).

Plaintiff is a Cuban refugee and lawful permanent resident of the United States.  Dkt. 44-
1 at 8 (D.C. Office of Administrative Hearings ("OAH") Final Order); Dkt. 44-1 at 25.  Plaintiff
appears to allege that, starting on May 1, 2022, he was a covered beneficiary of the D.C.
Healthcare Alliance.  Dkt. 44-1 at 8 (OAH Final Order); *see also* Dkt. 26-1 at 55 (medical
benefits card).  The D.C. Healthcare Alliance is "a locally-funded program designed to provide
medical assistance to District residents who are not eligible for Medicaid."  *Healthcare Alliance*,
Department of Health Care Finance–DHCF, https://dhcf.dc.gov/service/health-care-alliance (last
visited July 12, 2024).[3]

On October 16, 2022, Plaintiff was working as a Lyft driver in the District when he was
assaulted by a passenger.  Dkt. 26-1 at 25 (Virginia Workers' Compensation Commission claim
form); Dkt. 26-1 at 30 (Virginia Victims Fund claim form); Dkt. 26-1 at 24 (Alexandria Police
Department offense report confirming that on October 16, 2022 at 2:54 a.m., Plaintiff reported
that he was "assaulted by an unknown white male while transporting him to a location via Lyft").
Plaintiff characterizes the assault as a hate crime motivated by his sexual orientation.  *See* Dkt.
26-1 at 25 (Virginia Workers' Compensation Commission claim form); Dkt. 26-1 at 27, 30
(Virginia Victims Fund claim form).  The day after the incident, on October 17, 2022, Plaintiff

---

[3] The Court may take judicial notice of "information posted on official public websites of
government agencies."  *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

went to the Medstar Washington Hospital Emergency Clinic to seek medical care for injuries he

had sustained during the assault.  *See* Dkt. 13-2 at 4 (FAC).  At the emergency clinic, he learned

for the first time that his medical benefits had been terminated effective August 31, 2022, *see*

Dkt. 44-1 at 8 (OAH Final Order), and he alleges that this termination occurred "without

notification," Dkt. 13-2 at 4 (FAC); Dkt. 26 at 10–11; *see also* Dkt. 44-1 at 11 (MedStar letter).

At the time that Plaintiff first learned that his benefits had been terminated, he was

experiencing "extreme eye pain of his left eye, loss of vision, burning and seeing flashes of light

due to trauma he experienced."  Dkt. 44-1 at 11 (MedStar letter).  The clinic medical staff "made

attempts" to reinstate his insurance, including by "ma[king] calls," but "it was not possible" to

do so.  Dkt. 13-2 at 4 (FAC).  Plaintiff alleges that the D.C. representative "on the phone"

claimed that the District had notified him of the termination of his benefits, but, according to

Plaintiff, that assertion was untrue.  *See* Dkt. 26 at 11.  Because Plaintiff did not receive medical

treatment, he also "could not provide evidence [presumably to law enforcement] of [the] physical

harm" he experienced from the assault, "when [he] was a victim of a crime."  Dkt. 44-1 at 3

(Rubio Decl.).  In addition to his inability to obtain emergency care in October 2022, Plaintiff

further contends that, without medical benefits, he was unable "to receive continued HIV

treatment, [and] Prep after an HIV exposure."  Dkt. 13-2 at 4 (FAC).[4]  With the help of a non-

---

[4] According to the Centers for Disease Control and Prevention, Pre-Exposure Prophylaxis, often
referred to as "PrEP," is a prescription "HIV prevention option that works by taking one pill
every day."  *See* PrEP 101, CDC, https://www.cdc.gov/hiv/pdf/basics/prep/cdc-hiv-stsh-prep-
brochure-english.pdf (last visited July 12, 2024).  When taken daily, "PrEP can provide a high
level of protection against HIV."  *See id.*  In contrast, "HIV PEP, or post-exposure prophylaxis,
is a short course of HIV medicines taken very soon after a possible exposure to HIV to prevent
the virus from taking hold."  *Post-Exposure Prophylaxis*, HIV.gov (Nov. 15, 2023)
https://www.hiv.gov/hiv-basics/hiv-prevention/using-hiv-medication-to-reduce-risk/post-
exposure-prophylaxis.  PEP "must [be] start[ed] . . . within 72 hours (3 days) after a possible
exposure to HIV, or it won't work."  *Id.*

profit community health center, the Whitman-Walker Clinic, Plaintiff later confirmed that his medical benefits had, in fact, been terminated on August 31, 2022.  *See* Dkt. 44-1 at 4 (Rubio Decl.); Dkt. 44-1 at 8 (OAH Final Order); Dkt. 44-1 at 17.

After an initial unsuccessful attempt, *see* Dkt. 26 at 12, on February 27, 2023, Plaintiff met with a DHS supervisor who, "upon seeing that [his] medical coverage had indeed been illegally canceled . . . proceeded to restore it," Dkt. 44-1 at 3 (Rubio Decl.).  Plaintiff requested and received a letter dated February 27, 2023 confirming that he was covered by DHS medical benefits.  Dkt. 26 at 12–13; Dkt. 44-1 at 13 (DHS letter).  The DHS supervisor informed Plaintiff that "there was no need for [him] to request a hearing as the restoration of [his] coverage would cover past bills."  Dkt. 44-1 at 3 (Rubio Decl.).  Plaintiff nevertheless continued to pursue an administrative hearing because, in his words, "perhaps [the restoration would] cover[] past bills, but it did not cover the danger I was put in, nor did it cover medical services not provided, or treatments not received, among other things."  *Id.* (Rubio Decl.).  Plaintiff, accordingly, "requested a Fair Hearing because [he] disagree[d] with the agency action taken on [his] Medical Assistance (MA) benefits effective August 31, 2022."  Dkt. 44-1 at 21 (OAH letter).

On March 13, 2023, Plaintiff attended an "Administrative Hearing scheduled by the Office of Administrative Hearings," but "no one from the DHS appeared."  Dkt. 44-1 at 3 (Rubio Decl.); *see also* Dkt. 44-1 at 7–8 (OAH Final Order) ("[N]o one called in on behalf of DHS."). After the hearing, Plaintiff's administrative case was dismissed without prejudice because, as explained in the final order:

> Petitioner does not claim that he has incurred health expenses that D.C. Healthcare Alliance will not cover.  And, as an administrative law judge, I do not have authority to award Petitioner compensation for having not received necessary health care following the cancellation of his coverage.

Dkt. 44-1 at 8 (OAH Final Order); *see also id.* at 9 (OAH Final Order).[5]

On March 16, 2023, Plaintiff commenced the instant action.  Dkt. 1 (Compl.).  He declined to attend a subsequent D.C. administrative hearing held on March 29, 2023, Dkt. 44-1 at 21, submitting that the District "did not have the right to be absent from a hearing and [then] schedule another one," Dkt. 44-1 at 4 (Rubio Decl.), and indicating that he would, instead, pursue civil litigation, *see* Dkt. 26 at 14.

Before this Court, Plaintiff does not specify what, if any, adverse medical effects he suffered due to his lack of medical benefits on October 17, 2022, when he visited the Medstar emergency clinic.  He merely asserts that his "[i]njuries could not be counted because [he] did not receive medical attention."  Dkt. 13-2 at 5 (FAC).  Plaintiff does allege, however, that he suffered "[e]motional and psychological damage."  *Id.* (FAC).  He further alleges that, as a result of his erroneously terminated benefits, certain medical bills fell into collection and "will be on [his] credit report for 7 years."  *Id.* at 4 (FAC).[6]

## B.   Procedural History

The procedural history of this case is unusually complicated for its early stage.  After Plaintiff filed his initial complaint in March 2023, the Court granted Plaintiff leave to proceed *in*

---

[5] Plaintiff elsewhere alleges that he "requested an administrative hearing" from "the District of Columbia" and suggests that he did not receive one.  *See* Dkt. 13-2 at 4 (FAC).  It is unclear whether Plaintiff requested a hearing at some point prior to February 27, 2023 and did not receive one at that time or if he, instead, means that he, in effect, never received a hearing by virtue of DHS's nonappearance.  *See* Dkt. 25 at 14.

[6] Plaintiff alleges that he did not receive medical care on October 17, 2022, *see* Dkt. 44-1 at 3 (Rubio Decl.), and also alleges that certain medical bills went into collections, *see* Dkt. 13-2 at 5 (FAC).  Those allegations are not necessarily inconsistent because Plaintiff alleges that his benefits were not reinstated until February 27, 2023.  *See* Dkt. 26-1 at 57 (asserting that evidence in the record, *see* Dkt. 26-1 at 38, indicating that Plaintiff's benefits were reinstated as early as December 2022 "is . . . fraud"); *see also* Dkt. 44-1 at 3 (Rubio Decl.) (same).

*forma pauperis*. Min. Order (Mar. 28, 2023). The Court subsequently ordered the Deputy Clerk to issue summonses and to "cause service to be effected by the United States Marshals Service on the District of Columbia Department of Human Services," the sole defendant at that time. Min. Order (July 5, 2023). Proof of service by the U.S. Marshals Service ("USMS") was docketed on September 11, 2023. Dkt. 7. According to that document, the USMS served DHS, Mayor Bowser, and D.C. Attorney General Brian Schwalb via certified mail. *Id.* at 1–6. When DHS failed to appear, Plaintiff moved on October 12, 2023 for entry of default, Dkt. 8, and, on October 17, 2023, the Deputy Clerk of the Court entered default as to DHS, Dkt. 9.

Two days later, the District of Columbia appeared and moved to set aside the default. Dkt. 11. The District argued that the "entry of default against DHS was premature as there was no showing of proper service" and, in the alternative, that the Court "lack[ed] jurisdiction over [DHS] because it is *non sui juris*." Dkt. 14 at 3–4 (citing, *inter alia*, *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000)). The District also argued, pursuant to Federal Rule of Civil Procedure 55(c), that good cause existed to set aside the entry of default. *See id.* at 4. Plaintiff opposed the District's motion to set aside the default, Dkt. 12, and moved to amend his complaint, Dkt. 13, proposing to substitute the District of Columbia for DHS, among other changes. The District opposed Plaintiff's motion to amend. Dkt. 16.

On November 29, 2023, the Court held a hearing on the pending motions. The Court first deemed the amended complaint, Dkt. 13-2 (FAC), filed as a matter of course pursuant to Federal Rule of Civil Procedure 15. *See* Min. Entry (Nov. 29, 2023).[7] The Court, accordingly, denied as

---

[7] Federal Rule of Civil Procedure 15(a)(1) provides that a "party may amend its pleading once as a matter of course no later than" "21 days after service of a responsive pleading." As the Court explained on the record, as of November 29, 2023, no responsive pleading had been filed, leaving Plaintiff free to amend his complaint once as a matter of course.

moot Plaintiff's motion to amend. *Id.* The Court also granted the District's motion to set aside the default for good cause. *Id.*

Because Plaintiff was (and is) proceeding *in forma pauperis*, the USMS had effected service on the Court's behalf. As such, the Court had a particular interest in understanding the District's contention that the USMS had failed properly to effect service. At the hearing, counsel for the District was unable to explain how service should have been effected or what the USMS should have done differently, and he, accordingly, requested permission to file a supplemental notice. *See* Nov. 29, 2023 Hrg. Tr. (Rough at 5–11). The Court granted that request and directed the District to file a notice:

> explaining how, in the view of the Attorney General of the District of Columbia, the U.S. Marshals Service should go about effecting service on behalf of *in forma pauperis* plaintiffs in cases brought against the District of Columbia, or District of Columbia entities, that are subject to suit in this Court. The notice should indicate who the relevant designees are for purposes of service of process and how the Marshals Service should go about effecting service by certified mail as permitted under Superior Court Rule 4(j)(3)(A), which is made operable in this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.

Min. Entry (Nov. 29, 2023).

On December 6, 2023, the District filed its notice (or at least the first version of its notice) submitting that the USMS had three options to effect service. *See* Dkt. 19; Dkt. 20; Dkt. 21. First, the USMS can email the summons and complaint to (1) the Deputy Attorney General, (2) the Assistant Deputy Attorney General, *and* (3) "Tonia Robinson, Staff Assistant." Dkt. 21 at 3. Second, the USMS can send the summons and complaint by certified mail to any of those three individuals. *Id.* But to serve DHS, "albeit a *non sui juris* agency," the USMS would also have had to mail the summons and complaint to the "Operations Manager" of DHS's Office of the General Counsel. *Id.* Finally, the District submitted that "service may still be made in person, by serving [any] of these individuals personally." *Id.*

The following week, the District moved to dismiss Plaintiff's First Amended Complaint, Dkt. 13-2, pursuant to Federal Rule of Civil Procedure 12(b)(5) and 12(b)(6).  Dkt. 22.  The Court issued a *Fox/Neal* Order, Dkt. 23, and Plaintiff timely opposed the District's motion on December 18, 2023, Dkt. 25.  The District subsequently withdrew its contention that the complaint should be dismissed for failure to effect service.  Dkt. 24.  The District's motion is fully briefed and ripe for consideration.  *See* Dkt. 22; Dkt. 25; Dkt. 30.[8]

The same day that Plaintiff responded to the District's motion to dismiss, he also moved for summary judgment, Dkt. 26, and the following month, he moved for a hearing on summary judgment, Dkt. 35.  The District opposed Plaintiff's motion for summary judgment, Dkt. 32, and Plaintiff did not file a reply brief.  The District did not respond to Plaintiff's motion for a hearing on summary judgment.  On March 1, 2024, Plaintiff moved for leave to file a second amended complaint.  Dkt. 38.  Finally, on April 14, 2024, Plaintiff moved to recuse the undersigned pursuant to 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself" when "his impartiality might reasonably be questioned."  *See* Dkt. 42.  Both of those motions are fully briefed and ripe for consideration.  *See id.*; Dkt. 45; Dkt. 46; Dkt. 38; Dkt. 39; Dkt. 40.

## II. LEGAL STANDARDS

The motions presently before the Court invoke Rule 12, Rule 15, and Rule 56 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 455(a).

---

[8] Although Plaintiff filed a surreply, Dkt. 31, without seeking leave from the Court, *see Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011), given Plaintiff's *pro se* status, the Court will nevertheless consider the filing.  The Court also has considered Plaintiff's supplemental brief, Dkt. 41, which responds to a minute order that was entered in error on the instant case's docket, *see* Min. Order (Apr. 12, 2024) ("Entered in Error" (capitalization altered)), and the District's response thereto, Dkt. 43, as well as Plaintiff's subsequent reply, Dkt. 44.

**A.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original and internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). Although the factual allegations need not be "detailed," the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The Court must accept as true Plaintiff's factual allegations and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal citation omitted).  The Court "need not," however, "accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.*

**B.      Motion for Leave to File an Amended Complaint Pursuant to Rule 15(a)**

After a party has amended its complaint "once as a matter of course" pursuant to Rule 15(a)(1), it may further amend only "with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a)(2).  Although courts "should freely give leave [to amend] when justice so requires," *id.*, in "deciding whether to allow a party to amend a complaint, . . . courts

may consider 'undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [and] futility of amendment,'" *Mahon v.*

*Anesthesia Bus. Consultants, LLC*, 2016 WL 1452333, at *9 (D.D.C. Apr. 13, 2016) (quoting

*Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 344 (D.C. Cir. 1997)).

As relevant here, the Court "may deny a motion to amend a complaint as futile . . . if the

proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d

1085, 1099 (D.C. Cir. 1996). Review for futility is practically "identical to review of a Rule

12(b)(6) dismissal based on the allegations in the [proposed] amended complaint." *In re*

*Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 216 (D.C. Cir. 2010) (internal citation

omitted). Because leave to amend should be liberally granted, the party opposing amendment

bears the burden of identifying a colorable basis to deny leave to amend. *Abdullah v.*

*Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

**C.     Motion for Summary Judgment and a Hearing Pursuant to Rule 56**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is

material if it 'might affect the outcome of the suit under the governing law,' and a dispute about

a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty*

*Lobby*, 477 U.S. at 248). Although "district court[s] enjoy[] 'broad discretion in structuring

discovery,' summary judgment is premature unless all parties have 'had a full opportunity to

11

conduct discovery.'"  *Fields v. Vilsack*, 207 F. Supp. 3d 80, 86 (D.D.C. 2016) (quoting *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012)).

 Rule 56 does not "speak specifically to the question of what sort of a hearing is necessary to decide a summary-judgment motion."  10A Wright & Miller, Federal Practice and Procedure § 2720.2 (4th ed.).  In general, however, "[b]y rule or order, the court may provide for submitting and determining motions on briefs, without oral hearing."  Fed. R. Civ. P. 78(b); *see* LCvR 7(f). It is thus within the "sole discretion of the [C]ourt" whether to allow an oral argument on a motion for summary judgment.  *Spark v. Catholic Univ. of Am.*, 510 F.2d 1277, 1280 (D.C. Cir. 1975).  And the Court may "dispense with oral arguments in appropriate circumstances in the interest of judicial economy," such as when "[n]o showing has been made that an oral hearing would . . . produce[] any further evidence."  *Id.*

## D. Motion for Recusal Pursuant to 28 U.S.C. § 455(a)

 A litigant may seek recusal pursuant to 28 U.S.C. § 455(a) of a judge "in any proceeding in which his impartiality might reasonably be questioned."  Section 455(a)'s test is an objective one:  Recusal is required when "a reasonable and informed observer would question the judge's impartiality."  *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc) (per curiam).  Thus, § 455 "imposes a duty directly upon the judge to evaluate his own conduct." *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981).  The D.C. Circuit has recognized that recusal should not be "lightly granted."  *United States v. Pollard*, 959 F.2d 1011, 1023 (D.C. Cir. 1992).  And, ultimately, a "judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."  *United States v. Nixon*, 267 F. Supp. 3d 140, 147 (quoting *Doe v. Cabrera*, 134 F. Supp. 3d 439, 446 (D.D.C. 2015)).

### III. ANALYSIS

The Court will consider each of the pending motions in turn.

**A.      The District's Motion to Dismiss, Dkt. 22**

The District argues that the Court should dismiss Plaintiff's First Amended Complaint (hereinafter, "Complaint") for failure to state a claim under § 1983 and should decline to assert supplemental jurisdiction over Plaintiff's D.C. law claims, to the extent he asserts any, since those claims fail to satisfy Rule 8 and Rule 9 of the Federal Rules of Civil Procedure.  Dkt. 22.  The Court agrees that the Complaint, as currently drafted, fails to state a claim.

1.      *Plaintiff's § 1983 Claim*

Section 1983 establishes a private cause of action against any "person" who, under color of state or District of Columbia law, deprives another individual of a federal constitutional or statutory right.  Municipalities like the District of Columbia are liable for "constitutional torts" committed by its agents, but only if those agents "acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–695 (1978)).  To establish municipal liability under § 1983, a plaintiff must demonstrate, first, that "there was an underlying constitutional [or statutory] violation" and, second, that "the municipality's policy or custom caused the constitutional violation." *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155 (D.D.C. 2015).  To plead a claim under § 1983, a plaintiff must allege facts sufficient to plausibly satisfy both of these elements. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Plaintiff alleges that DHS's termination of his D.C. Healthcare Alliance medical benefits on August 31, 2022—without any notice or a prior opportunity to be heard—constituted a violation of his right to procedural due process under the Fifth Amendment. *See generally* Dkt.

13

13-2 (FAC).  The "Fifth Amendment's Due Process Clause prohibits the District of Columbia from depriving persons of 'property, without due process of law.'"  *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (quoting U.S. Const. amend. V).  Given Supreme Court precedent holding that the Constitution's procedural due process "restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation; or to denial of a tax exemption; or to discharge from public employment," *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (internal citations omitted), Plaintiff has alleged enough to trigger due process scrutiny, *see also NB ex. rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) ("It is well established that certain government benefits give rise to property interests protected by the Due Process Clause." (citing *Kelly*, 397 U.S. 254)); *Salazar v. District of Columbia*, 954 F. Supp. 278, 326 (D.D.C. 1996).  The District, for its part, agrees that "notice and an opportunity for a hearing prior to termination of Medicaid benefits are required by the Due Process Clause of the Fifth Amendment," Dkt. 39 at 4, and it does not dispute that this right to a hearing extends to the termination of medical benefits provided through the D.C. Healthcare Alliance.

Rather than take issue with the underlying constitutional violation Plaintiff has alleged, the District argues that Plaintiff's § 1983 claim fails because the Complaint identifies no "municipal policy, custom, or practice that caused [his] alleged constitutional injury."  Dkt. 22 at 5.  A plaintiff can show that a municipality's "custom or policy caused the claimed violations of his constitutional rights," *Warren*, 353 F.3d at 39, in any of several ways:

> Generally speaking, such an official policy exists when (1) the municipality adopts a policy that itself violates the Constitution; (2) the unconstitutional action was taken by a "policy maker" within the government; (3) the employees' unconstitutional actions "are so consistent that they have become [a] 'custom'" of the municipality of which the supervising policymaker must have been aware;

14

or (4) the municipality knew or should have known of a risk of constitutional violations, but showed "deliberate indifference" to that risk by failing to act.

*Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Baker*, 326 F.3d at 1306).

Here, the Complaint alleges that because the "District of Columbia implements public benefits administration policies," the "government entity itself is the driving force of the deprivation in its official capacity." Dkt. 13-2 at 4 (FAC). Elsewhere, Plaintiff argues that "the District currently terminates health coverage without explaining to the claimant the reason for the denial. It is clearly established that the District of Columbia executes a policy and custom by failing to issue timely notification to beneficiaries," Dkt. 25 at 8, and Plaintiff argues that the District has a "policy or custom of failing to issue timely notice of final termination of public benefits (medical coverage)," *id.* at 9.

The Court agrees that the Complaint, even when construed liberally and in light of Plaintiff's responsive filings, is deficient. Most notably, the Complaint does not allege any facts that would support a plausible inference that the cancellation of Plaintiff's medical benefits was carried out pursuant to a D.C. policy; indeed, the Complaint makes no reference whatsoever to any policy or set of policies. To be sure, the District "implements public benefits administration policies," Dkt. 13-2 at 4 (FAC), but that non-controversial premise says nothing about whether the District has a policy or custom of failing to provide notice or an opportunity to be heard before terminating a beneficiary's coverage. A complaint that merely offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). With that standard in mind, the "conclusory allegations" that the termination of Plaintiff's medical benefits was "the result of a policy, practice, [or] custom. . . on the part of Defendant . . . are not sufficient." *Xingru Lin*, 268

15

F. Supp. 3d at 100.  Similarly, Plaintiff's suggestion that DHS should be considered an official

"policy maker," *Hurd*, 997 F.3d at 337, with the "final authority to formulate policy," Dkt. 25 at

16, fails.  A municipal policy maker for purposes of municipal liability under §1983 is an

individual, not an agency.  *See, e.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27

(1988).

Because the operative complaint fails to plead sufficient "factual content that allows the

[C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), the Court will grant without prejudice

the District's motion to dismiss Plaintiff's § 1983 claim.[9]  In addition, although the official

capacity Defendants have yet to appear (and may not have yet been served), the Court notes that

a "section 1983 suit for damages against municipal officials in their official capacities is . . .

equivalent to a suit against the municipality itself."  *Atchinson v. District of Columbia*, 73 F.3d

418, 424 (D.C. Cir. 1996).  That poses two problems for Plaintiffs.  First, Plaintiff's claims

against the official capacity Defendants are, as currently drafted, identical to his claims against

the District and, accordingly, deficient for the reasons explained above.  Second, courts of this

District, in similar situations, have dismissed suits against municipal officials in their official

capacity when the same claim or claims are brought against the municipality itself on the ground

that "retaining both as named defendants is 'redundant and an inefficient use of judicial

resources.'"  *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017) (quoting

*Chisholm v. Superior Court*, 2007 WL 1601718, at *2 (D.D.C. June 4, 2017)).  The Court,

---

[9] The District does not address whether, or under what circumstances, denying emergency
prescription coverage might rise to the level of a constitutional violation.  *See* Dkt. 13-2 at 4
(FAC) ("I requested emergency medical coverage and w[as] ignored by the District of
Columbia.").  But, because the Court concludes that Plaintiff has failed to allege *any* relevant
policy, practice, or custom on the part of the District, the Court need not wade into those waters.

accordingly, will *sua sponte* dismiss Plaintiff's 1983 claim as to the official capacity Defendants without prejudice.

        2.     *Plaintiff's Remaining Claims*

The District next argues, Dkt. 22 at 7, that the Court should dismiss Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367(c), which provides that a district court may "decline to exercise supplemental jurisdiction over a claim" where the "court has dismissed all claims over which it has original jurisdiction."  Apart from his due process claim, Plaintiff alleges that the District violated "D.C. laws" and "Title XIX of [the] Social Security" Act, as well as various federal regulations.  Dkt. 13-2 at 10 (FAC).

It is unclear whether Plaintiff intends to bring stand-alone claims under any or all of these provisions or whether, instead, he merely contends that the District violated § 1983 by depriving him certain statutory rights accorded under those other laws.  To the extent Plaintiff invokes D.C. law to state a claim under § 1983, his claim fails, since § 1983 protects the public only from violations of federal rights, *see Hodges v. Jones*, 31 F.3d 157, 167 (4th Cir. 1994), and, for the purposes of § 1983, "any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia," 42 U.S.C. § 1983.  To the extent Plaintiff seeks to invoke federal statutory law to support his § 1983 claim, the claim fails because, as explained above, he has failed to allege facts sufficient to satisfy the custom or policy requirement.  And, finally, to the extent Plaintiff seeks to bring stand-alone D.C. or federal law claims, he fails to allege sufficient facts to put Defendants and the Court on notice of the nature of his claim.  *See* Fed. R. Civ. P. 8 & 12(b)(6).  Even *pro se* litigants must comply with the Federal Rules of Civil Procedure, *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987), and Plaintiff's Complaint does not contain the required "short and plain statement of the claim

showing that [Plaintiff] is entitled to relief," Fed. R. Civ. P. 8, or that he has stated a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), even when liberally construed and considered in light of his other filings.

The Court, accordingly, will dismiss Plaintiff's remaining claims pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

## B.    Plaintiff's Motion for Leave to Amend, Dkt. 38

On March 1, 2024, Plaintiff moved for leave to file a second amended complaint.  Dkt. 38.  The District opposes Plaintiff's motion, arguing that the proposed amendments would be futile.  Dkt. 39.  For the reasons explained below, the Court will deny without prejudice Plaintiff's motion for leave to amend but will appoint counsel, who can evaluate whether a good faith basis exists for seeking leave to file a revised, proposed second amended complaint in federal district court.

Plaintiff's proposed Second Amended Complaint names the same defendants as the First Amended Complaint—the District of Columbia, Mayor Bowser, Director Zeilinger, and Director Turnage—but now names Mayor Bowser and Directors Zeilinger and Turnage in their *individual*, not official, capacities.  *Compare* Dkt. 38-2 at 1 (Proposed SAC), *with* 13-2 at 2–3 (FAC).  The proposed Second Amended Complaint "is brought under 42 U.S.C. [§] 1983, [§] 1985(3), [§] 1986 to enforce the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution and Title XIX of the Social Security Act," Dkt. 38-2 at 4 (Proposed SAC ¶ 5), but Plaintiff also brings several claims under D.C. statutes and common

law[10] and names as other causes of action "abuse of power," *id.* at 35–37 (Proposed SAC

¶¶ 100–08), and "obstruction of justice," *id.* at 37–38 (Proposed SAC ¶¶ 109–16).

In the proposed Second Amended Complaint, Plaintiff seeks: (1) ten million dollars,

"jointly and severally," against each of the individual capacity Defendants; (2) punitive damages;

(3) a declaratory judgment "that the practices and procedures of the defendants alleged herein

violate[] . . . the Due Process Clause of the Fifth Amendment of the Constitution, Title XIX of

the Social Security Act, 42 USC [§] 1396a(a)(3) and District of Columbia law;" (4) a "permanent

order" directing Defendants to comply with the Constitution, the Social Security Act, and D.C.

law; and (5) "[r]etention of jurisdiction over this action to ensure that defendants comply with

the mandates of the Court's orders." *Id.* at 62–63 (Proposed SAC ¶¶ 231–38).

Because the proposed Second Amended Complaint contains over 200 numbered

paragraphs and 16 separate claims, many of which overlap in substance, the Court will refer to

Plaintiff's claims by the statutes and constitutional provisions they invoke. *Id.* at 2 (Proposed

SAC ¶ 1). Plaintiff seeks leave to bring amended claims pursuant to 42 U.S.C. §§ 1983, 1985,

and 1986. Of these federal claims, only the § 1983 claims name the District of Columbia as a

Defendant. *See* Dkt. 38-2 at 40 (Proposed SAC ¶¶ 123–24) (alleging that Mayor Bowser,

together with Directors Zeilinger and Wayne, violated § 1985(3)). Thus, because only the

District has appeared and moved to dismiss, only the proposed amended § 1983 claims are

---

[10] *See* Dkt.38-2 at 33–35 (Proposed SAC ¶¶ 93–98) (various D.C. code provisions); *id.* at 51–53
(Proposed SAC ¶¶ 174–87) (intentional infliction of emotional distress based on the events of
August 31, 2022 and March 13, 2023); *id.* at 53–58 (Proposed SAC ¶¶ 188–211) ("omission"
based on the events of August 31, 2022 and March 13, 2023); *id.* at 58–59 (Proposed SAC
¶¶ 212–19) ("gross, willful, wanton, and reckless negligence" based on the events of August 31,
2022 (capitalization altered)); *id.* at 59–61 (Proposed SAC ¶¶ 220–27) ("gross, irregular, wanton,
and reckless negligence" based on the events of March 13, 2023 (capitalization altered)); *id.* at
61–62 (Proposed SAC ¶¶ 228–34) ("gross, irregular, extreme, reckless, and outrageous
negligence . . . from August 31, 2022 to the present" (capitalization altered)).

before the Court.[11]  Those claims assert violations of the Due Process Clause of the Fifth

Amendment, Dkt. 38-2 at 30–31 (Proposed SAC ¶¶ 82–86), and violations of the Social Security

Act and its implementing regulations, *id.* at 31–32 (Proposed SAC ¶¶ 87–92).  Although the

proposed Second Amended Complaint also invokes the Fourteenth Amendment, *id.* at 41–47

(Proposed SAC ¶¶ 130–58), the "Fourteenth Amendment does not apply to the District of

Columbia," *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 70 (D.D.C. 2007).

Plaintiff also seeks leave to bring a seemingly new set of claims arising from a separate

series of events that allegedly took place in 2020, when he "did not receive the public benefits to

which . . . he was entitled" "as a Cuban newcomer," among them, "Medicaid, TANF, [and] Food

Stamps."  Dkt. 38-2 at 6–7 (Proposed SAC ¶ 16); *see also id.* at 5 (Proposed SAC ¶ 8) ("[I]n

2020, I was also the victim of a scheme that violated [my] civil rights by those accused here.").

The District does not address those claims (beyond arguing that Plaintiff has, as a general matter,

failed to allege a policy, custom, or practice sufficient to sustain a municipal liability claim).  *See*

*generally* Dkt. 39.

The question before the Court is whether the proposed amendments would be futile—that

is, whether the allegations contained in the proposed Second Amended Complaint would survive

a motion to dismiss.  The Court first will address Plaintiff's proposed amendments to his § 1983

claim alleging a violation of the Fifth Amendment's Due Process Clause and then address his

§ 1983 claim alleging a violation of the Social Security Act and regulations.  The Court

---

[11] The District argues that adding § 1985(3) and § 1986 claims would be futile, seemingly on behalf of the individual Defendants, including by raising qualified immunity.  *See* Dkt. 39 at 6-10; *id.* at 7 ("Rubio's claims against the District officials cannot be maintained." (capitalization altered)).  But the individual Defendants have yet to appear, and the District has not indicated that it represents them.

ultimately concludes that, as to both sets of claims, permitting Plaintiff to file his proposed, second amended complaint would be futile.

      1.     *Plaintiff's § 1983 Claim Alleging a Fifth Amendment Violation*

Plaintiff advances several theories of municipal liability in support of his due process claim.

First, the proposed Second Amended Complaint alleges that the "District of Columbia maintains ostensibly constitutional policies" but that "these policies are routinely ignored in custom and practice," Dkt. 38-2 at 22 (Proposed SAC ¶ 57), and Plaintiff asserts that "it is clear that Defendants have a policy, pattern, and practice of failing to ensure that Medicaid beneficiaries receive adequate written notice [and] the opportunity for a hearing," *id.* at 32 (Proposed SAC ¶ 89). Plaintiff thus seeks to show that the District has a custom and pattern of ignoring written policies and not providing notice to beneficiaries before terminating public health benefits. *See Hurd*, 997 F.3d at 337.

"To hold a municipality liable based on a pattern of similar constitutional violations, a plaintiff must show that the municipality 'knowingly ignore[d] a practice that was consistent enough to constitute custom.'" *Id.* at 338 (quoting *Warren*, 353 F.3d at 39). Importantly, "[c]ourts have required a plaintiff to plead facially similar past wrongdoing to establish a plausible custom." *Leach v. District of Columbia*, 2022 WL 1316436, at *13 (D.D.C. May 3, 2022). Here, however, Plaintiff does not identify *any* similar incident preceding the termination of his medical benefits. Although he points to the D.C. Circuit's decision in *Maldonado v. District of Columbia*, 61 F.4th 1004 (D.C. Cir. 2023), *see* Dkt. 38-2 at 22–24 (Proposed SAC ¶¶ 57–61); *see also NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31 (D.C. Cir. 2015), Plaintiff's proposed Second Amended Complaint turns on unrelated conduct. To be sure, it is

*conceivable* that—with the assistance of counsel and upon further investigation—Plaintiff *might* be able to draw a plausible connection between the conduct at issue in *Maldonado* and this case. But "conceivable" and "might" are not enough to state a claim, and, at least as pled in Plaintiff's proposed Second Amended Complaint (and explained in his accompanying motion), the Court cannot plausibly infer that the allegations raised in *Maldonado*—a class challenge to the District's "policies (or lack thereof)," procedures, and practice of failing to provide Medicaid recipients individualized, written notice of the "reasons for denying their *prescriptions* and an explanation of how to appeal," *id.* 1006–07 (emphasis added)—are "facially similar" to the predicate violations that Plaintiff alleges. *See also Hurd*, 997 F.3d at 338 (reasoning that plaintiff's reliance, at the summary judgment stage, on two prior class actions to establish a "widespread practice or custom" failed because "[b]oth cases involve[d] failures by the District that bear little resemblance to the type of unconstitutional conduct asserted by [plaintiff]"). Indeed, on Plaintiff's own telling, unlike in *Maldonado*, he did receive an opportunity for hearing, *see* Dkt. 44-1 at 3 (Rubio Decl.), and although he alleges that he did not receive notice of the termination of his benefits, he does not allege facts sufficient to plausibly infer that any such omission was part of a larger pattern, as opposed to an isolated error or oversight.  Standing alone, the conclusory assertion that the District of Columbia routinely ignores its written policies is too bare an allegation to plead municipal liability based on a custom or pattern.

Second, Plaintiff alleges that "abuses of power against [him]" on August 31, 2022 and March 13, 2023 "were made in direct contravention of written policies on procedural protections" and that Mayor Bowser, by not communicating "a final decision as the final policymaker in charge of investigating and evaluating the abuse[s] of power against" Plaintiff, "ratified" these abuses, thereby rendering the District of Columbia liable.  Dkt. 38-2 at 48–51

(Proposed SAC ¶¶ 163, 165, 171–72). It is true that a municipality can be held liable for "the action of a policy maker within the government." *Baker*, 326 F.3d at 1306; *see Hurd*, 997 F.3d at 337. But even assuming (as certainly seems plausible) that Mayor Bowser qualifies as a policy maker for these purposes, Plaintiff does not allege that she took any action that violated his constitutional right to procedural due process. His theory that, by not investigating and announcing a "final decision" in his case, Mayor Bowser "ratified" the termination of his medical benefits would collapse the relevant inquiry and impermissibly render senior government officials liable any time they failed to investigate and disavow a subordinate's unlawful acts. Such a theory cannot be squared with the governing caselaw, which holds that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Atchinson*, 73 F.3d at 420 ("[A] municipality's liability under section 1983 . . . cannot rest on a *respondeat superior* theory.").

Finally, Plaintiff's alternative theories—deliberate indifference, failure to train, and negligent supervision—fare no better. Although captioned separately, Plaintiff's "negligent supervision" theory turns, primarily if not entirely, on allegations sounding in failure to train. *See* Dkt. 38-2 at 43 (Proposed SAC ¶¶ 140–44) ("The need to train officials . . . is obvious;" "district officials are not adequately trained;" "lack of training"). Failure-to-train, in turn, is a subspecies of deliberate indifference. *See Bell*, 82 F. Supp. 3d at 156. Plaintiff has failed to allege enough, however, to support a claim of this sort.

To determine whether a municipality is liable under a theory of "deliberate indifference," courts ask whether the municipality "knew or should have known of the risk of constitutional violations, but did not act." *Jones v. Horne,* 634 F.3d 588, 601 (D.C. Cir. 2011) (internal

quotation marks omitted).  "One approach to proving deliberate indifference is by demonstrating a municipality's failure to adequately train its employees."  *Bell*, 82 F. Supp. 3d at 156.  "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'"  *Id.* (internal citation omitted).  Importantly, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Id.* (internal citation omitted).  Plaintiff, however, does little more than recite the applicable legal standard and fails to offer factual allegations sufficient to plead a pattern of similar constitutional violations by untrained employees.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In sum, Plaintiff's proposed amendments seeking to assert a § 1983 claim premised on the Fifth Amendment lack factual allegations sufficient to survive a motion to dismiss.  The Court, accordingly, agrees that the proposed amendments (at least as currently pled) would be futile as to the District of Columbia.

Plaintiff does not appear to assert any § 1983 claim against the individual capacity Defendants.  Nor could the factual matter contained in Plaintiff's proposed Second Amended Complaint, at least as currently pled, support any such claim.  A plaintiff pursuing a claim under § 1983 "must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 (emphasis added).

24

And, here, Plaintiff has not alleged that any of the individual capacity Defendants was

"personally involved in the illegal conduct." *Simpkins v. District of Columbia Gov't*, 108 F.3d

366, 369 (D.C. Cir. 1997); *see also Crum v. Fed. Bureau of Prisons*, 2021 WL 2682501, at *3

(D.D.C. June 30, 2021), *aff'd* 2022 WL 769573 (D.C. Cir. Feb. 11, 2022).  Although Plaintiff

does allege that the actions of the individual capacity Defendants "resulted in [his] being

deprived of a heritage asset by the District without due legal process," Dkt. 38-2 at 19–20

(proposed SAC ¶ 47); that they "determined [his] eligibility for benefits," *id.* at 20 (proposed

SAC ¶ 48); that their actions "resulted in [him] not receiving medical care," *id.* (proposed SAC

¶ 49); and that their actions "resulted in [his] failure to assert his right to a pre-termination

evidentiary hearing of its benefits," *id.* (proposed SAC ¶ 50), those allegations are too conclusory

to satisfy the pleading standards set out in *Twombly*, 550 U.S. at 554, 557, and *Iqbal*, 556 U.S. at

675, 678.

> 2. *Plaintiff's § 1983 Claim Alleging a Social Security Act Violation*

Plaintiff also seeks leave to bring a claim, pursuant to § 1983, alleging that the District

violated Title XIX of the Social Security Act and its implementing regulations.  Dkt. 38-2 at 4

(Proposed SAC ¶¶ 5, 7).  Title XIX of the Social Security Act established Medicaid, a

"cooperative federal-state program that provides federal funding for state medical services to the

poor." *NB ex rel. Peacock*, 794 F.3d at 35 (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431,

433 (2004)).  And the District of Columbia, by participating in Medicaid and receiving federal

funding under the program, must comply with certain conditions imposed by federal law.  *See id.*

Plaintiff's Medicaid argument is difficult to parse for several reasons.  First, it is unclear

whether Plaintiff intends to allege that he was a Medicaid beneficiary, whose benefits were

terminated or suspended without the required notice and opportunity for hearing, *see*, *e.g.*, Dkt.

38-2 at 26 (proposed SAC ¶ 70), or whether he intends to allege that he was incorrectly denied

Medicaid coverage (along with other benefits) in the first place, *see*, *e.g.*, *id.* at 6–7 (proposed

SAC ¶¶13–16).

Second, Plaintiff alleges—and the record evidence indicates—that he was insured by

D.C. Healthcare Alliance, not under Medicaid, during the relevant time period. *See id.* at 15

(proposed SAC ¶ 22) ("the same person called the alliance that until then provided medical

coverage"); *see also* Dkt. 44-1 at 8 (OAH Final Order) (Petitioner "testified that he was covered

by D.C. Healthcare Alliance").  Healthcare Alliance coverage and Medicaid coverage, however,

are mutually exclusive.  As the D.C. Circuit has observed, the "D.C. HealthCare Alliance [is] a

locally funded program that provides medical coverage for uninsured District residents who do

not qualify for Medicaid."  *D.C. Healthcare Sys., Inc. v. District of Columbia*, 925 F.3d 481, 483

(D.C. Cir. 2019); *see also Healthcare Alliance*, Department of Health Care Finance–DHCF,

https://dhcf.dc.gov/service/health-care-alliance (last visited July 12, 2024) ("The D.C. Healthcare

Alliance Program . . . is a locally-funded program designed to provide medical assistance to

District residents who are not eligible for Medicaid.").

Finally, to the extent Plaintiff alleges that he was improperly denied Medicaid coverage

at the outset, the proposed Second Amended Complaint says nothing about whether he ever

requested a hearing with respect to that determination—as opposed to the later action terminating

whatever coverage he had (under Medicaid or through the D.C. HealthCare Alliance).

Without confronting any of these threshold questions, the District argues that Plaintiff

"has not shown that Title XIX allows for a private right of action to beneficiaries."  Dkt. 39 at 1;

*see also id.* at 7.  That argument, however, raises a host of additional questions, which neither the

District nor Plaintiff address.  Most notably, § 1983 "can presumptively be used to enforce

unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 172 (2023); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273 (2022). Neither party, however, says a word about the enforcement mechanisms contained in the Social Security Act, 42 U.S.C. § 1396 *et seq.*

The Court need not resolve any of these (unbriefed) questions because Plaintiff's Social-Security-Act-based § 1983 claim against the District fails for the same reason that the due-process-based claim fails: It lacks factual allegations sufficient to satisfy the policy or custom requirement for municipal liability under § 1983 against the District of Columbia.

3.   *Plaintiff's D.C. Law Claims*

Plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction. *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 188 (D.D.C. 2013). That hurdle is easily satisfied with respect to Plaintiff's federal-law claims. *See* 28 U.S.C. § 1331. But Plaintiff's burden is not so easily satisfied with respect to his D.C.-law claims. As to those claims, Plaintiff seeks to invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Dkt. 38-2 at 4 (proposed SAC ¶ 5) (mistakenly citing to "28 U.S.C. § 1267").

Section 1367 provides in relevant part:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Court "may decline to exercise supplemental jurisdiction," however, when "the claim raises a novel or complex issue of State law;" "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;" the

district court has dismissed all claims over which it has original jurisdiction;" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id*. § 1367(c). "Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court . . . ." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (internal quotation marks and citation omitted).

Here, it is very early in the litigation, and it is difficult to determine whether this case raises issues that are solely of local concern. In the present posture, the Court is not convinced that it should exercise its discretion to assert supplemental jurisdiction over these new claims, which seek to add individual capacity Defendants and to hold them personally liable for conduct that the proposed Second Amended Complaint does not tie to any specific, identifiable action that they took.

*     *     *

Plaintiff has made admirable efforts as a *pro se* litigant to understand several complex areas of the law and to state a claim for the losses that he alleges he endured. For the reasons explained above, the Court concludes that he has yet to state a claim or to state a claim over which this Court is currently prepared to exercise supplemental jurisdiction. That said, the Court further concludes that Plaintiff's arguments merit further exploration—and, if appropriate, further development—with the assistance of counsel. The Court will, accordingly, deny Plaintiff's motion for leave to file a Second Amended Complaint without prejudice but will appoint counsel to represent Plaintiff going forward.

The Court expresses no view on whether any further efforts are likely to bear fruit and merely concludes that in light of the "[n]ature and complexity of the action," the potential merits of Plaintiff's claims, Plaintiff's inability to pay retained counsel, and the "interests of justice

[that] will be served by appointment of counsel, including the benefit the Court may derive from the assistance of appointed counsel," LCvR 83.11(b)(3), it is appropriate to appoint counsel at this time. *See* 28 U.S.C. § 1915(e)(1) (the Court "may request an attorney to represent any person unable to afford counsel"). The Court will leave it to appointed counsel to decide, in consultation with Plaintiff, whether there is a good faith basis to continue to pursue this case in federal district court, and will leave it to appointed counsel to decide whether to file a subsequent motion for leave to amend. The Court will hold the case in abeyance for 60 days to provide time to appoint counsel and for that counsel to become familiar with the case.

**C.      Motion for Summary Judgment, Dkt. 26, and Motion for a Hearing on Summary Judgment, Dkt. 35**

The Court will also deny without prejudice Plaintiff's motion for summary judgment, Dkt. 26, and related motion for a hearing on summary judgment, Dkt. 35, as premature. Discovery has not yet begun and, indeed, the Court has now dismissed the operative complaint as to the sole Defendant who has appeared. As a result, as things now stand, Plaintiff has failed to assert a cognizable claim upon which the Court could, even with a developed factual record, grant summary judgment in his favor.

**D.      Motion for Recusal**

That leaves only Plaintiff's motion for recusal pursuant to 28 U.S.C. § 455(a). Dkt. 42. Section § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Although Plaintiff's motion is at times difficult to follow, he appears to argue that recusal is warranted: (1) because the Court informed the District of Columbia that a default had been entered against it, and the District subsequently appeared; (2) because it was the Court's responsibility to effect service on his behalf but the Court ordered the District to file a notice

explaining how, in its view, "the U.S. Marshals Service should go about effecting service on behalf of *in forma pauperis* plaintiffs in cases brought against the District of Columbia, or District of Columbia entities, that are subject to suit in this Court," Min. Entry (Nov. 29, 2023); (3) because certain of Plaintiff's motions, in particular his motion for summary judgment, Dkt. 26, and motion for a hearing on summary judgment, Dkt. 35, remained pending for some time after they were filed; (4) because a minute order was erroneously entered on the instant case's docket, *see* Min. Order (Apr. 12, 2024); and (5) because "the standard applied to [Plaintiff] has been more stringent with [respect to] his motions and submissions," Dkt. 42 at 5, as compared to the District.  None of these arguments supports recusal.

The Court will address each of Plaintiff's arguments in turn.  First, as explained above, at a status conference held on November 29, 2023, the Court granted the District's motion to set aside the default.  Min. Entry (Nov. 29, 2023).  As the Court stated on the record:

> I am going to grant the motion to set aside the default pursuant to Rule 55(c) . . . [T]he Court finds that there is good cause.  I don't find any reason to believe that the default was willful.  The Court actually contacted the [D]istrict when we noticed that there had been no answer and they promptly then appeared.  I don't think that the [P]laintiff will suffer any prejudice as a result of setting aside the default, and it will simply require litigating the case on the merits.

Nov. 29, 2023 Hrg. Tr. (Rough at 13).

Plaintiff was not entitled to a default judgment, and the fact that the Court alerted the District to the entry of default does not give rise to objective concerns about impartiality or show "bias[] and prejudice[] against" Plaintiff.  Dkt. 42 at 2.[12]  As noted, the test is "not that of a casual observer, but rather a reasonable and informed observer with full knowledge of all the

---

[12] Although citing only 28 U.S.C. § 445(a), portions of Plaintiff's motion echo 28 U.S.C. § 445(b)(1), which provides that a judge shall disqualify himself when he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

facts and circumstances." *Nixon*, 267 F. Supp. 3d at 147.  Given the strong judicial preference

against resolving litigation by default, *see, e.g.*, *English-Speaking Union v. Johnson*, 353 F.3d

1013, 1021 (D.C. Cir. 2004), and the need to ensure that, in this case, the District had received

actual notice of these *in forma pauperis* proceedings (where the Court was responsible for

ensuring proper service, and where the District subsequently claimed that it had not been

properly served), no reasonable person could infer any bias from the above-described provision

of notice.  *See In re Sherwin-Williams Co.*, 607 F.3d 474, 477–78 (7th Cir. 2010).

      Second, the Court asked the District to provide additional information about its argument

that USMS had failed to effect service properly in light of that same obligation to ensure that

service is properly effected on behalf of *in forma pauperis* litigants.  It does not evince any bias

against Plaintiff—if anything, it is evidence of just the opposite.  The District, like any defendant

in any case, was free to raise non-frivolous arguments in support of dismissal, including

arguments related to service of process, that USMS effected service on Plaintiff's behalf

notwithstanding.  Understanding the District's position, moreover, facilitated the Court's efforts

to ensure that service was promptly—and indisputably—executed.

      Third, Plaintiff's assertion that the Court ignored or rejected motions that remained

pending or otherwise displayed bias by not deciding Plaintiff's motions more quickly is

misplaced.  *See* Dkt. 42 at 5; Dkt. 46 at 7, 11.  As explained above, the motions at issue were

filed prematurely.  In any event, the Court hopes that appointed counsel will expedite further

proceedings.

      Fourth, the fact that a minute order was erroneously entered on the docket in this matter

has no bearing on a recusal.  *See* Dkt. 46 at 11–12.  The entry in question was promptly corrected

to note the error and in no way would lead a "reasonable and informed observer" to "question the

judge's impartiality." *United States v. Microsoft*, 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc) (per curiam).

Fifth, as discussed, no objective observer could conclude that the Court has treated Plaintiff more "stringently" than the District throughout this litigation.

The Court, accordingly, concludes that recusal is not required under 28 U.S.C. § 455(a).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that: (1) Defendant the District of Columbia's motion to dismiss, Dkt. 22, is **GRANTED** without prejudice; (2) Plaintiff's motion for leave to file a second amended complaint, Dkt. 38, is **DENIED** without prejudice; (3) Plaintiff's motion for summary judgment, Dkt. 26, and motion for a hearing on summary judgment, Dkt. 35, are **DENIED** without prejudice as premature; (4) Plaintiff's motion for recusal, Dkt. 42, is **DENIED**; and (5) the case will be **HELD IN ABEYANCE** for 60 days to provide time for appointed counsel to review the relevant background and to appear.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 12, 2024