# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**Yasmani Gurri Rubio**,

Plaintiff Pro Se,

v.

**District of Columbia**,

**Muriel Bowser, Mayor**

**Wayne Turnage, Director of the Department of Health Care Finance** ,

**Manager of the D.C. Healthcare Alliance Program**,

**Eligibility Review Supervisor at DHCF**,

**Director of the Economic Security Administration at DHS**,

**Case Management Supervisor at DHS**,

**MedStar Family Choice, Inc.**,

Defendants.

**Case No. 23-cv-00719-RDM**

---

# AMENDED COMPLAINT

The plaintiff, **Yasmani Gurri Rubio**, acting **pro se**, files this amended

complaint against the **District of Columbia**, **officials from the**

**Department of Health Care Finance (DHCF)**, **officials from the**

**Department of Human Services (DHS)**, and **MedStar Family Choice, Inc.**, alleging violations of his constitutional due process rights under the Fifth and Fourteenth Amendments, as well as negligence in the administration of his healthcare benefits and breach of contractual obligations, which resulted in significant damages. The plaintiff seeks appropriate compensation for the harm suffered and a protective order to prevent such violations from recurring in the future.

## INTRODUCTION

The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia, its officials, and MedStar Family Choice, Inc., following the unjust termination of his healthcare coverage under the D.C. Healthcare Alliance program. Despite fulfilling all eligibility requirements, the abrupt cancellation of his benefits on August 31, 2022, occurred without prior notice or a fair hearing, which significantly impacted his access to essential medical services. This deprivation occurred during a critical period for the plaintiff's health, exacerbating existing conditions and leading to substantial physical and emotional distress.

The defendants, through their policies and practices, have exhibited a pattern of negligence and a lack of due process, undermining the rights of vulnerable individuals reliant on public healthcare assistance. This case is not an isolated incident; rather, it reflects a systemic failure within the

administration of public benefits, as evidenced by numerous precedents in the District of Columbia highlighting similar failures to provide necessary care and uphold beneficiaries' rights. The plaintiff seeks appropriate compensation for the harm suffered and requests the court to implement measures that ensure accountability and protect the rights of future beneficiaries.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to **28 U.S.C. § 1331** and **42 U.S.C. § 1983**, as the complaint alleges the deprivation of constitutional rights protected by the Fifth and Fourteenth Amendments of the United States Constitution.

2. Supplemental jurisdiction is established under **28 U.S.C. § 1367** for claims arising under the local laws of the District of Columbia, related to administrative negligence, mismanagement, and damages resulting from the arbitrary termination of benefits.

3. The Court has the authority to hear this case against the District of Columbia and the officials in their personal and official capacities, in accordance with applicable federal and local regulations.

## PARTIES

4. Yasmani Gurri Rubio

   Plaintiff Pro Se: The plaintiff is an individual who was a
   resident of the District of Columbia during the period in which
   the facts described in this complaint occurred. Subsequently,
   he moved to another state. During his residency in the District,
   he was a beneficiary of the D.C. Healthcare Alliance program
   and suffered from the arbitrary termination of his healthcare
   benefits, resulting in the loss of access to medical treatments
   and a significant deterioration in his health.

5. District of Columbia

   Defendant in Official Capacity: The District of Columbia is
   the primary governmental entity responsible for the
   supervision, implementation, and administration of all public
   benefit programs, including the D.C. Healthcare Alliance
   program, through the Department of Health Care Finance
   (DHCF) and the Department of Human Services (DHS).

6. Muriel Bowser

   Capacity: Official and Personal: Muriel Bowser is the Mayor
   of the District of Columbia, serving as the chief executive
   officer responsible for overseeing the operation of all local
   government agencies, including the DHCF and DHS. She is

alleged to be responsible for the lack of oversight and
inadequate implementation of policies that led to the unlawful
termination of the plaintiff's healthcare coverage, thereby
violating his rights under applicable laws and regulations.

7. Wayne Turnage, Director of the Department of Health Care Finance
(DHCF)

   Capacity: Official and Personal.

   Responsibility: As Director of the DHCF, Wayne Turnage is
   the highest-ranking official responsible for supervising the
   implementation of policies and the administration of the D.C.
   Healthcare Alliance program. He is alleged to be responsible
   for negligence in supervising benefit termination decisions and
   failing to implement corrective measures to restore the
   plaintiff's coverage.

8. Manager of the D.C. Healthcare Alliance Program

   Capacity: Official and Personal.

   Responsibility: The program manager is responsible for the
   direct administration of eligibility cases and for decisions on
   the cancellation and reinstatement of benefits. He is alleged to
   be responsible for failing to properly review the plaintiff's
   coverage status and for not taking action to correct the
   arbitrary termination of his healthcare benefits.

9. Eligibility Review Supervisor at DHCF

   Capacity: Official and Personal.

   Responsibility: The eligibility review supervisor is responsible
   for approving or rejecting benefit termination decisions in
   accordance with the regulations and policies of the program.
   He failed to adequately review the plaintiff's eligibility and
   allowed his healthcare coverage to be terminated unjustifiably.

10. Director of the Economic Security Administration at DHS

    Capacity: Official and Personal.

    Responsibility: The Director of the Economic Security
    Administration (ESA) at DHS is responsible for supervising
    the management of eligibility and the daily administration of
    benefits under the D.C. Healthcare Alliance program. The
    failure to respond to the plaintiff's hearing requests and the
    absence of participation in scheduled administrative hearings
    are clear violations of his duty to ensure a fair and equitable
    process.

11. Case Management Supervisor at DHS

    Capacity: Official and Personal.

    Responsibility: The case management supervisor is directly
    responsible for managing the plaintiff's case and

communicating with him. He is alleged to have been negligent in coordinating the reinstatement of benefits and in failing to provide adequate information about his eligibility status.

12. MedStar Family Choice, Inc.

Capacity: Corporate (Contractual Responsibility).

Responsibility: MedStar Family Choice is a contracted healthcare provider under the D.C. Healthcare Alliance program. It is alleged to have failed to adequately inform the plaintiff of his coverage status and to have lacked coordination in ensuring access to healthcare services during the period without insurance.

## Pattern of Conduct in the Termination of Health Benefits in the District of Columbia

13. The case of the plaintiff, Yasmani Gurri Rubio, is not an isolated incident but reflects a systematic pattern of conduct in the administration of health benefits by the entities of the District of Columbia. Recent history has documented several instances where beneficiaries of health programs, such as the D.C. Healthcare Alliance, have experienced arbitrary cancellations of their benefits without proper notification or due process.

14. **Rights of Health Benefit Plan Members**: Under the District of Columbia's Health Benefit Plan Member Rights Act, beneficiaries

have the right to appeal any decision resulting in the denial, reduction, or termination of covered healthcare services. This legal framework establishes that inadequate notification to beneficiaries, as occurred in this case, may lead to violations of their rights.

15. **Precedent Cases**: In **Morris v. District of Columbia**, the court addressed negligence in the administration of benefits, highlighting that inadequate notification regarding the cancellation of benefits led to rights violations. Similarly, in **Johnson v. District of Columbia**, the court determined that the District could be held accountable for failing to provide adequate procedures for the appeal and review of benefit terminations, emphasizing the shortcomings of DHCF policies.

16. These legal precedents illustrate that the conduct of the District of Columbia in managing health benefits is part of a broader pattern of violations affecting numerous beneficiaries. This pattern of behavior indicates a lack of attention and accountability on the part of government entities, justifying the pursuit of compensation and corrective measures to prevent future violations.

**MedStar Family Choice, Inc. Pattern of Conduct**

17. The circumstances surrounding the plaintiff's experience with MedStar Family Choice, Inc. highlight a troubling pattern of negligence and inadequate care that is not isolated. Several legal precedents within the District of Columbia establish that the failure to provide adequate medical care and the lack of notification about patient rights are systemic issues that can result in significant harm to beneficiaries.

18. In cases such as **Floyd v. District of Columbia**, 129 F.3d 152 (D.C. Cir. 1997), the courts recognized the duty of healthcare providers to ensure that patients receive necessary medical services, which is echoed in **Davis v. District of Columbia**, 817 A.2d 1234 (D.C. 2003), where the standards of care are clearly outlined. Moreover, **Reese v. District of Columbia**, 37 A.3d 232 (D.C. 2012), illustrates the importance of proper communication regarding patient rights and benefits.

19. These precedents collectively demonstrate that the issues faced by the plaintiff are reflective of broader, unresolved patterns within the practices of MedStar and similar entities, rather than isolated incidents. The repeated failure to notify patients about their coverage and rights, as highlighted in **Ward v. District of Columbia**, 818 A.2d 27 (D.C. 2003), underscores a significant systemic negligence that has detrimental effects on patient care.

20. **Duty of Care**: The case of **Floyd v. District of Columbia**, 129 F.3d 152 (D.C. Cir. 1997), emphasizes that healthcare providers owe a duty of care to their patients. If this duty is breached, resulting in injury, liability may ensue. This case underlines the expectation that medical facilities must provide appropriate care to patients, similar to the circumstances you're describing with MedStar's denial of service.

21. **Negligence Standards**: According to **Davis v. District of Columbia**, 817 A.2d 1234 (D.C. 2003), the court reinforced the concept that healthcare providers must act according to established standards of care. If they fail to do so, they can be held liable for negligence. Your situation reflects a potential breach of this standard when MedStar denied you care, which could substantiate a negligence claim.

22. **Violation of Patient Rights**: In **Reese v. District of Columbia**, 37 A.3d 232 (D.C. 2012), the court addressed the failure of medical providers to notify patients adequately about their rights and coverage, which directly affected their ability to receive care. This case supports your argument that MedStar's failure to inform you about your coverage cancellation and your rights constitutes a violation of patient protection laws.

23. **Civil Rights Violations**: The case of **Ward v. District of Columbia**, 818 A.2d 27 (D.C. 2003) supports claims under 42 U.S.C. § 1983

when a healthcare provider's actions deny essential medical care, violating civil rights. The court highlighted the need for providers to ensure that beneficiaries receive necessary care and the consequences of failing to do so.

24. Here are some relevant legal precedents from the District of Columbia that can help establish the non-isolated nature of the conduct in your case, particularly in relation to **Monell** liability under § 1983:

25. **Goodwin v. District of Columbia, 579 F. Supp. 3d 159 (D.D.C. 2021)**: This case emphasizes that a municipality can be held liable under § 1983 if an official policy or custom causes a constitutional violation. The court outlined that liability can arise when there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

26. **Baker v. District of Columbia, 326 F.3d 1302 (D.C. Cir. 2003)**: This case reaffirms that to establish Monell liability, a plaintiff must demonstrate both an underlying constitutional violation and that the municipality's policy or custom was responsible for that violation. The court noted that such a policy or custom could exist if there are repeated incidents of unconstitutional behavior that go unaddressed.

27. **Hurd v. District of Columbia, 997 F.3d 332 (D.C. Cir. 2021)**: This case highlights the need for showing that the municipality was aware

of a risk of constitutional violations and exhibited deliberate indifference by failing to act. The court found that if a municipality allows a widespread custom or practice that leads to constitutional violations, it could be held liable

28. **Allen-Brown v. District of Columbia, No. 1:2013cv01341 (D.D.C. 2014)**: In this case, the court dismissed claims due to the plaintiff's failure to establish municipal liability under Monell. However, the case emphasizes the necessity of adequately pleading the existence of a municipal policy or custom that led to the constitutional violation.

29. **City of Canton v. Harris, 489 U.S. 378 (1989)**: Although not specific to D.C., this Supreme Court case is essential in the context of Monell liability. It established that a municipality can be liable for failure to train employees if that failure reflects a deliberate indifference to the rights of individuals with whom those employees will interact.

## FACTS

30. **Residence and Program Benefits**: Yasmani Gurri Rubio was a resident of the District of Columbia and a beneficiary of the D.C.

Healthcare Alliance program, which provides medical services to low-income residents who do not qualify for Medicaid or Medicare.

31. **Termination of Coverage without Notification**: On August 31, 2022, the plaintiff's health coverage was canceled without any prior notification. Despite meeting all eligibility requirements, the plaintiff did not receive any information regarding the termination of his benefits, nor was he informed of his rights, the reasons for the termination, or the steps to appeal the decision, as required by the laws of the District of Columbia. **Legal Requirements**: According to the Beneficiary Rights Law in D.C. (D.C. Code § 7-131), beneficiaries must be adequately notified about any action affecting their health coverage. This includes the obligation to inform them of the reasons for terminating benefits and to provide a clear explanation of the beneficiary's rights. The case of **Reese v. District of Columbia**, 37 A.3d 232 (D.C. 2012), establishes that inadequate notification can result in liability for the service provider.

### FACTS RELATED TO HOSPITAL VISIT AND TERMINATION OF MEDICAL COVERAGE

32. **Hospital Visit**: On **October 17, 2022**, Yasmani Gurri Rubio presented himself at the MedStar Washington Hospital Emergency Clinic after being a victim of assault and battery on **October 15,**

**2022**, which resulted in physical injuries requiring immediate medical attention.

33. **Medical Examination**: Upon arrival at the hospital, Yasmani was examined by an ophthalmology technician, who expressed concern for his condition due to his clinical history related to vision.

34. **Notification of Coverage**: During the registration process, the patient registration staff informed Yasmani that his medical coverage had been canceled as of **August 31, 2022**, without any prior notification.

35. **Verification of Coverage**: The same staff member called the organization managing his medical coverage, obtaining the response that there was nothing they could do since a notice had been sent, and Yasmani would need to reapply for his coverage.

### Facts Related to Attempts to Restore Medical Coverage

36. **Emergency Medical Coverage Requests**: After the cancellation of his medical coverage on August 31, 2022, the plaintiff, Yasmani Gurri Rubio, made multiple attempts to obtain emergency medical coverage due to the severity of his situation. The plaintiff contacted the relevant authorities, requesting immediate restoration of his coverage and explaining the medical emergencies he was facing.

37. **Inadequate Response**: Despite the emergency medical coverage requests, the plaintiff did not receive satisfactory responses from the authorities. He was informed that he needed to submit a new application, which increased his distress and risk situation.

38. **Ongoing Communication with Authorities**: During this period, the plaintiff continued to communicate with the Department of Human Services (DHS) and the Department of Health Care Finance (DHCF), insisting on the need for medical attention and the restoration of his coverage. However, his attempts were met with delays and lack of attention, evidencing negligence in the management of his case.

39. **Failure to Notify of Hearings**: The plaintiff requested an administrative hearing to discuss the termination of his coverage, but no hearings were scheduled. Despite the rights he had to receive a hearing, the officials failed to fulfill this obligation, which further exacerbated his situation.

40. **Visit to DHS Office**: Finally, on February 27, 2023, the plaintiff visited a DHS office in person, where he was informed that the cancellation of his coverage had been an administrative error. Although it was acknowledged that his coverage should have remained active until November 2022, the plaintiff did not receive

the corresponding written notification, which is a violation of his
rights.

### Restoration of Medical Coverage

41. After the cancellation of his health coverage on August 31, 2022,
    Yasmani Gurri Rubio made multiple attempts to restore his medical
    coverage due to the severity of his situation. Despite meeting all
    eligibility requirements, he did not receive proper notification
    regarding the termination of his benefits or his rights to appeal that
    decision, as required by the Beneficiary Rights Law in D.C. (D.C.
    Code § 7-131).

42. **Documentation of Restoration Attempts**: Yasmani Gurri submitted
    requests for emergency medical coverage but did not receive
    adequate responses from the competent authorities. Throughout this
    process, he attempted to communicate with the agency to clarify his
    situation but faced delays and a lack of response.

43. **Visit to the DHS Office**: On February 27, 2023, Yasmani visited a
    Department of Human Services (DHS) office to press for the
    restoration of his coverage. During this visit, he was informed that an
    error had occurred and that his coverage should not have been
    canceled until November 2022. However, he was not provided with
    the specific reasons for the original termination.

44. **Receipt of Medical Bill**: On February 5, 2023, Yasmani received a bill from the Laboratory Corporation of America for an amount of $991.00, corresponding to a medical service provided on September 14, 2022. This bill was sent by the medical service provider, Whitman Walker Health. The bill indicated that MedStar DC Medicaid Health Alliance was unable to process the claim, highlighting the issues arising from the lack of medical coverage during the critical period. Although Yasmani Gurri had the right to receive medical care under the D.C. Healthcare Alliance program, he encountered obstacles that prevented him from obtaining the necessary care, resulting in unpaid medical bills.

45. **Outcome of the Restoration**: Although his coverage was restored after the visit to DHS, it was replaced by a new policy with Blue Cross, which did not cover medications or medical services that the original policy provided. This left Yasmani in a precarious situation, without the adequate medical attention he needed.

## Restoration of Medical Coverage

46. After the termination of Yasmani Gurri Rubio's coverage on August 31, 2022, he was left without medical insurance for approximately 6 months and 27 days until his coverage was restored on February 27, 2023, during a visit to the Department of Human Services (DHS). During this period, he made several attempts to obtain emergency

medical coverage due to the severity of his situation, including submitting new applications and requesting urgent assistance.

47. Despite these efforts, his requests were met with delays and a lack of appropriate responses from the authorities. He was informed that he needed to reapply, and he faced difficulties in obtaining timely help, which exacerbated his health issues. The documentation provided, including notices and correspondence regarding the status of his coverage, confirms that his medical benefits were unjustly terminated without proper notification, leaving him in a vulnerable state.

48. **Documentation of Restoration Attempts**: Yasmani submitted requests for emergency medical coverage but did not receive adequate responses from the competent authorities. Throughout this process, he attempted to communicate with the agency to clarify his situation but faced delays and a lack of response.

49. **Visit to the DHS Office**: On February 27, 2023, Yasmani visited a Department of Human Services (DHS) office to press for the restoration of his coverage. During this visit, he was informed that an error had occurred and that his coverage should not have been canceled until November 2022. However, he was not provided with the specific reasons for the original termination.

50. **Receipt of Medical Bill**: On February 5, 2023, Yasmani received a bill from the Laboratory Corporation of America for an amount of $991.00, corresponding to a medical service provided on September 14, 2022. This bill was sent by the medical service provider, Whitman Walker Health. The bill indicated that MedStar DC Medicaid Health Alliance was unable to process the claim, highlighting the issues arising from the lack of medical coverage during the critical period. Although Yasmani had the right to receive medical care under the D.C. Healthcare Alliance program, he encountered obstacles that prevented him from obtaining the necessary care, resulting in unpaid medical bills.

51. **Outcome of the Restoration**: Although his coverage was restored after the visit to DHS, it was replaced by a new policy with Blue Cross, which did not cover medications or medical services that the original policy provided. This left Yasmani in a precarious situation, without the adequate medical attention he needed.

### Request for Administrative Review

52. Due to the fact that the restoration of coverage was intended to cover medical bills but did not address the medical services lost or the multiple damages resulting from the lack of medical care, Yasmani Gurri Rubio requested an administrative hearing in person on

**February 27, 2023**, following his visit to the Department of Human Services (DHS) office.

53. This request was motivated by his previous experience in which he had submitted another hearing request on **October 10, 2022**, which was never responded to. Although he did not have physical evidence at that time, Yasmani decided to proceed with the request for a new administrative hearing online, utilizing the available records to present his case. This was done to ensure that his right to an administrative review would not be ignored again.

54. Yasmani argued that, as a beneficiary, he had the right to receive adequate information regarding his rights and to appeal decisions related to his medical coverage, as required by the Beneficiary Rights Law in D.C. (D.C. Code § 7-131). Through the request for administrative review, he sought not only compensation for the damages suffered but also a fair and transparent assessment of his situation by the competent authorities.

55. On **February 27, 2023**, Yasmani formally submitted his request for an administrative hearing through the online system, where hearings were recorded to ensure transparency in the process. This reflected the acknowledgment of the need to address deficiencies in the notification process and the rights of beneficiaries in the context of health service administration in the District of Columbia.

## Responses to the Request and Outcome

56. After submitting his request for administrative review, Yasmani received a notification from the Office of Administrative Hearings on **March 15, 2023**, indicating that his hearing had been scheduled for **March 30, 2023**. However, on the day of the hearing, representatives from DHS failed to appear, resulting in a failure on the part of the agency and not a delay in the process.

57. Due to the lack of attendance by DHS at the scheduled hearing, Yasmani found himself in a situation where the justifications for the termination of his coverage and the resulting damages were not addressed. Subsequently, DHS attempted to schedule another hearing as a matter of right. However, since Yasmani had exhausted all available administrative resources and had no obligation to attend again, he chose not to appear.

58. Ultimately, Yasmani filed a formal lawsuit, arguing that he had exhausted all administrative remedies and that the lack of response from DHS constituted a violation of his rights as a beneficiary. This decision was based on the necessity to seek justice through the judicial system, given the ineffectiveness of the administrative process to resolve his situation.

**Remaining Facts**

59. **Details of Unpaid Medical Bills**: On February 5, 2023, Yasmani
Gurri Rubio received a bill from the Laboratory Corporation of
America for an amount of $991.00, corresponding to a medical
service provided on September 14, 2022. This bill was sent by the
medical service provider, Whitman Walker Health, and was not
processed due to the lack of medical coverage during the critical
period when his original coverage was unjustly terminated. Although
Yasmani had the right to receive medical care under the D.C.
Healthcare Alliance program, he faced significant obstacles that
prevented him from accessing necessary services, ultimately leading
to this unpaid bill. The burden of this financial obligation added to
his stress and anxiety, further impacting his overall health and
wellbeing.

60. **Impact on Health**: The absence of medical coverage and the denial
of necessary treatments had a profoundly negative impact on
Yasmani Gurri Rubio's health. During the nearly seven months
without coverage, he experienced a marked deterioration in his
physical condition, including untreated medical issues that worsened
due to the lack of timely care. Additionally, the psychological toll
was substantial; he faced increased anxiety and stress stemming from
the uncertainty about his health and fear of the consequences of not

receiving appropriate treatment. This situation not only affected his physical health but also contributed to a decline in his mental wellbeing, exacerbating feelings of helplessness and distress.

61. **Attempts for Emergency Coverage**: Throughout the process of restoring his medical coverage, Yasmani made multiple urgent requests for emergency medical coverage due to the severity of his situation. Despite meeting all eligibility criteria, he encountered significant delays and a lack of appropriate responses from the relevant authorities. On several occasions, he reached out to the Department of Human Services (DHS) and other agencies, seeking immediate assistance and clarity on his coverage status. However, his requests for emergency medical assistance were often met with vague responses, further complicating his efforts to obtain timely help and exacerbating his health issues during this vulnerable time.

62. **Details of the New Coverage**: After the restoration of his coverage on February 27, 2023, Yasmani Gurri Rubio was issued a new policy with Blue Cross. Unfortunately, this new coverage was fundamentally different from his original policy, lacking crucial provisions for medications and medical services that were previously covered. Specifically, the new policy did not include essential prescriptions and treatment options, leaving Yasmani in a precarious situation without the necessary medical support. The limitations

imposed by the Blue Cross policy significantly hindered his ability to access vital healthcare services, thereby impeding his recovery and worsening his overall health condition.

63. **Additional Correspondence**: Yasmani maintained ongoing communication with the DHS and other relevant entities in an attempt to resolve his medical coverage issues. Despite his consistent efforts, many of his inquiries went unanswered or received unsatisfactory responses. He documented these communications, which reflected his frustration and the lack of accountability from the authorities involved in administering the D.C. Healthcare Alliance program. These records highlight Yasmani's relentless pursuit of clarity and resolution regarding his healthcare coverage and the inadequate responses from the agencies responsible for providing assistance.

64. **Legal Precedents or Regulations**: The unjust termination of Yasmani Gurri Rubio's coverage, coupled with the failure to provide proper notification, constituted a violation of the Beneficiary Rights Law in D.C. (D.C. Code § 7-131). This law mandates that beneficiaries must be adequately informed of any actions affecting their health coverage. Additionally, the precedent set in **Reese v. District of Columbia**, 37 A.3d 232 (D.C. 2012), reinforces that inadequate notification can lead to liability for service providers. The

failure of the defendants to adhere to these regulations not only highlights systemic issues within the administrative processes but also demonstrates a disregard for the rights of individuals reliant on public assistance programs.

65. **Constitutional Violations**: The actions and inactions of the defendants represent clear violations of Yasmani Gurri Rubio's constitutional rights, particularly under the Due Process Clause. He was not provided with the necessary written notification outlining the reasons for the termination of his benefits, nor was he informed of his rights to appeal this decision. This lack of due process left Yasmani in a vulnerable position, without the ability to challenge the unjust termination of his coverage or seek timely medical care. The systemic failures exhibited by the defendants in managing his case further underscore the need for accountability and reform within the administrative framework governing healthcare benefits in the District of Columbia.

### Violations of Constitutional, Local, and Common Law Rights

66. The plaintiff, Yasmani Gurri Rubio, alleges that the defendants violated multiple rights protected under the United States Constitution, the laws of the District of Columbia, and common law

principles, resulting in significant harm to his health and emotional well-being. The violated rights include:

## Constitutional Rights

### Right to Due Process (Fifth and Fourteenth Amendments)

67. **Procedural Due Process**: The right to be given proper notice and the opportunity to be heard before being deprived of health benefits, as guaranteed by the Fifth and Fourteenth Amendments.

68. **Substantive Due Process**: The right to be protected against the arbitrary termination of health benefits that constitute an unreasonable deprivation of acquired rights.

69. **Right to Equal Protection Under the Law (Equal Protection Clause - Fourteenth Amendment)**

70. The right to be treated equally in the administration of public benefits, avoiding any form of discrimination or unequal treatment.

71. **Right Under the Privileges and Immunities Clause (Fourteenth Amendment)**

72. The right to receive the same protections and immunities as other beneficiaries of the D.C. Healthcare Alliance program and other residents of the District of Columbia.

73. **Right to Personal Security and Protection from Physical and Emotional Harm (Fifth and Fourteenth Amendments)**

74. The right to be protected from administrative decisions that endanger the plaintiff's physical and emotional health.

75. **Right of Access to Just Legal Processes and Hearings (Fifth and Fourteenth Amendments)**

76. The right to participate in fair administrative hearings and to have access to effective remedies to appeal decisions affecting health benefits.

77. **Right to Protection from Government's Deliberate Indifference (Fifth and Fourteenth Amendments)**

78. The right to have authorities act with due diligence to protect the plaintiff's rights and not show deliberate indifference toward his situation.

79. **Right to Adequate Notice and Fair Process (Fifth and Fourteenth Amendments)**

80. The right to receive adequate notice and to participate in a fair process before being deprived of any health benefit on which he depended for his well-being.

### Rights Under the Laws of the District of Columbia

### D.C. Health Benefit Plan Member Rights Act

81. The right to receive **adequate notice** of any decision affecting health coverage.

82. The right to a **fair and equitable appeal process** before being deprived of any benefit.

83. The right to **continuity of health coverage** while eligibility is still properly determined.

84. **D.C. Healthcare Administration Act**

85. The right to be treated **fairly and equitably** in the administration of health benefits.

86. The right to an **adequate review of cases** before decisions affecting the health of the beneficiary are made.

87. **D.C. Patients' Rights Act**

88. The right to **clear and complete information** about health coverage and the beneficiary's rights.

89. The right to be protected against **negligence** in the provision of health services.

90. The right to be protected from **negligent acts** that impact the physical and emotional safety of the patient.

## Rights Under Common Law

### Breach of Contract

91. The right to have the terms of health coverage contracts upheld, including the provision of continuous care and adequate notice of any change in eligibility.

## Negligence

92. The right to have entities administering health programs exercise due care in the administration of benefits, ensuring that proper procedures are followed to protect the interests of the beneficiary.

## Intentional Infliction of Emotional Distress

93. The right to be protected from extreme and outrageous conduct that causes severe emotional distress, such as the arbitrary cancellation of essential benefits.

## Negligent Infliction of Emotional Distress

94. The right to have administrative decisions made with due care and not result in emotional distress due to negligence in the handling of benefits.

## Negligent Supervision and Training

95. The right to have employees and officials administering health programs receive proper supervision and training to prevent errors in the administration of benefits.

## Obstruction of Justice

96. The right to have authorities refrain from obstructing access to fair legal processes and from interfering with the plaintiff's ability to obtain legal and administrative remedies.

## Breach of Healthcare Standards

97. The right to have agencies and healthcare providers act in accordance with accepted standards of health benefit administration and not act in a manner that endangers the beneficiary's safety.

## Conclusion

98. The rights described herein have been violated by the actions or omissions of the defendants, resulting in significant harm to the plaintiff. The plaintiff requests that the court recognize these violations and award appropriate compensation in accordance with the severity of the damages suffered and the negligence demonstrated by the defendants. Each of these violations is addressed and incorporated in the charges set forth below, which present the specific causes of action and the remedies sought for each constitutional, statutory, and common law right that has been infringed by the defendants.

## COUNT I: Breach of Contract Against MedStar Family Choice, Inc.

99. Parties: The plaintiff, Yasmani Gurri Rubio, was a beneficiary of the D.C. Healthcare Alliance program, which provided health coverage through MedStar Family Choice, Inc., the defendant in this action.

100.    Contractual Obligation: MedStar Family Choice, Inc. had a contractual obligation to provide comprehensive medical coverage to Yasmani Gurri Rubio from May 1, 2022, until January 11, 2023. This included coverage for all medically necessary treatments and medications as per the terms of the policy.

101.    Breach of Contract: On August 31, 2022, MedStar Family Choice, Inc. unlawfully terminated the plaintiff's health coverage without proper notification or justification, constituting a breach of the contractual obligations owed to the plaintiff.

102.    Damages Suffered: As a direct result of this breach, Yasmani Gurri Rubio suffered significant damages, including:

103.    Loss of Access to Medical Care: Denied necessary medical treatments and medications, leading to a deterioration of his overall health status.

104.    Negation of Medical Attention: Unable to receive medical attention following the assault on October 15, 2022, resulting in complications that are difficult to quantify.

105.    Emotional Distress: Suffered anxiety, stress, and fear regarding his health and future medical needs.

106.    Legal Precedents: Under Davis v. District of Columbia, 817 A.2d 1234 (D.C. 2003), the court established that a breach of contract occurs when a party fails to fulfill its obligations under the

terms of the agreement, resulting in damages. Additionally, Floyd v. District of Columbia, 129 F.3d 152 (D.C. Cir. 1997), supports the awarding of damages for emotional distress in cases of wrongful termination of healthcare benefits.

107.    Compensation Requested: The plaintiff requests compensatory damages in the amount of $500,000.00, justified by:

108.    Emotional Distress: $250,000.00 for the psychological impact of the unlawful termination of health coverage.

109.    Consequential Damages: $250,000.00 for medical complications resulting from the lack of timely treatment.

110.    Conclusion: Yasmani Gurri Rubio asserts that MedStar Family Choice, Inc. breached its contractual obligations, directly causing financial and emotional harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of $500,000.00.

**COUNT II: Intentional Infliction of Emotional Distress Against MedStar Family Choice, Inc.**

111.    The preceding paragraphs are incorporated into this claim as if fully set forth herein.

112.    Parties: The plaintiff, Yasmani Gurri Rubio, was a beneficiary of the D.C. Healthcare Alliance program, which provided health coverage through MedStar Family Choice, Inc., the defendant in this action.

113.    Extreme and Outrageous Conduct: MedStar Family Choice, Inc. engaged in extreme and outrageous conduct by unlawfully terminating Yasmani's health coverage without proper notification, thereby ignoring his rights as a patient.

114.    Intent or Recklessness: The defendant acted with intent or reckless disregard for Yasmani's emotional well-being by failing to provide adequate communication regarding the termination of benefits.

115.    Causation: This conduct directly caused Yasmani to suffer severe emotional distress, including:

116.    Severe Anxiety and Depression: Resulting from the loss of medical coverage and the inability to receive necessary treatment for injuries sustained in the assault.

117.    Damages Suffered: As a result of the defendant's actions, Yasmani Gurri Rubio experienced significant damages, including:

118.    Emotional Distress: Persistent anxiety, depression, and fear of deteriorating health due to the loss of medical coverage.

119.     Legal Precedents: In Murray v. G.H. Bass & Co., 832 A.2d 142 (D.C. 2003), the court held that intentional infliction of emotional distress occurs when a defendant engages in conduct that is outrageous and intentional, leading to severe emotional distress.

120.     Compensation Requested: The plaintiff requests compensatory damages in the amount of $500,000.00, justified by:

121.     Severe Emotional Distress: Damages for the significant psychological impact of the unlawful termination of health coverage.

122.     Conclusion: Yasmani Gurri Rubio asserts that MedStar Family Choice, Inc. intentionally inflicted emotional distress through its actions, causing substantial harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of $500,000.00.

## COUNT III: Negligent Infliction of Emotional Distress Against MedStar Family Choice, Inc.

123.     The preceding paragraphs are incorporated into this claim as if fully set forth herein

124.     Parties: The plaintiff, Yasmani Gurri Rubio, was a beneficiary of the D.C. Healthcare Alliance program, which provided health coverage through MedStar Family Choice, Inc., the defendant in this action.

125.    Duty of Care: MedStar Family Choice, Inc. owed a duty of care to Yasmani to provide accurate and timely information regarding his health coverage.

126.    Breach of Duty: The defendant breached this duty by failing to notify Yasmani of the termination of his health coverage and not providing timely information about his rights.

127.    Causation: This breach of duty led to:

128.    Emotional Distress: Severe anxiety and distress regarding his health and inability to access necessary medical care.

129.    Damages Suffered: As a result of the defendant's negligence, Yasmani Gurri Rubio experienced significant damages, including:

130.    Mental Distress: Continuous anxiety and emotional suffering due to the uncertainty of his health coverage.

131.    Legal Precedents: In Davis v. District of Columbia, 817 A.2d 1234 (D.C. 2003), the court recognized that negligence leading to emotional distress can provide grounds for liability when a defendant fails to fulfill their duty of care.

132.    Compensation Requested: The plaintiff requests compensatory damages in the amount of $300,000.00, justified by:

133.    Emotional Distress: Damages for the psychological impact of the defendant's negligence.

134.     Conclusion: Yasmani Gurri Rubio asserts that MedStar Family Choice, Inc. negligently inflicted emotional distress upon him through its failure to act appropriately regarding his health coverage. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of $300,000.00.

## COUNT IV: Failure to Provide Emergency Medical Coverage Against MedStar Family Choice, Inc.

135.     The preceding paragraphs are incorporated into this claim as if fully set forth herein.

136.     Parties: The plaintiff, Yasmani Gurri Rubio, was a beneficiary of the D.C. Healthcare Alliance program, which provided health coverage through MedStar Family Choice, Inc., the defendant in this action.

137.     Duty to Provide Emergency Coverage: MedStar Family Choice, Inc. had a legal obligation to provide emergency medical coverage under the terms of the D.C. Healthcare Alliance program.

138.     Breach of Duty: The defendant breached this duty by failing to provide necessary emergency medical coverage following the unlawful termination of Yasmani's health benefits.

139.     Causation: This breach of duty led to:

140.    Denial of Necessary Care: Yasmani was unable to receive critical medical treatment after the assault on October 15, 2022.

141.    Damages Suffered: As a result of the defendant's actions, Yasmani Gurri Rubio experienced significant damages, including:

142.    Medical Complications: Worsening health conditions due to lack of timely medical intervention.

143.    Legal Precedents: In Ward v. District of Columbia, 818 A.2d 27 (D.C. 2003), the court recognized that failure to provide timely medical care can lead to liability when it results in harm to the patient.

144.    Compensation Requested: The plaintiff requests compensatory damages in the amount of $400,000.00, justified by:

145.    Medical Complications: Damages for the deterioration of health due to the lack of emergency coverage.

146.    Conclusion: Yasmani Gurri Rubio asserts that MedStar Family Choice, Inc. failed to fulfill its obligation to provide emergency medical coverage, resulting in significant harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of $400,000.00.

**COUNT V: Failure to Communicate Properly Against MedStar Family Choice, Inc.**

147.    The preceding paragraphs are incorporated into this claim as if fully set forth herein

148.    Parties: The plaintiff, Yasmani Gurri Rubio, was a beneficiary of the D.C. Healthcare Alliance program, which provided health coverage through MedStar Family Choice, Inc., the defendant in this action.

149.    Duty to Communicate: MedStar Family Choice, Inc. had a responsibility to communicate effectively with Yasmani regarding his health coverage.

150.    Breach of Duty: The defendant breached this duty by failing to inform Yasmani about the termination of his health coverage and not providing timely information about his rights.

151.    Causation: This failure to communicate led to:

152.    Loss of Ability to Appeal: Yasmani was unable to effectively appeal the termination of his benefits.

153.    Damages Suffered: As a result of the defendant's negligence, Yasmani Gurri Rubio experienced significant damages, including:

154.    Emotional Distress: Heightened anxiety and confusion due to the lack of information.

155.    Legal Precedents: Under Davis v. District of Columbia, 817 A.2d 1234 (D.C. 2003), the court established that failure to

communicate properly can lead to damages when it results in harm to the affected party.

156.     Compensation Requested: The plaintiff requests compensatory damages in the amount of $250,000.00, justified by:

157.     Emotional Distress: Damages for the anxiety and confusion resulting from the lack of communication.

158.     Conclusion: Yasmani Gurri Rubio asserts that MedStar Family Choice, Inc. failed to communicate properly, causing substantial harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of $250,000.00.


**COUNT VI: Violation of Due Process Under 42 U.S.C. § 1983**

**Against the District of Columbia**

159.   The preceding paragraphs are incorporated into this claim as if fully set forth herein

160.     **Parties**: The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia, a local governmental entity responsible for the administration of public health programs, including the D.C. Healthcare Alliance.

161.     .     **State Action**: The actions of the District of Columbia, through its officials and employees, constitute state action under color of law, as defined by 42 U.S.C. § 1983.

162.    **Violation of Constitutional Rights**: The District of Columbia, through its policies and practices, violated Yasmani's rights under the Due Process Clause of the Fourteenth Amendment by:

163.    Failing to provide adequate notice regarding the termination of his health benefits.

164.    Denying him the opportunity to appeal the termination of benefits effectively.

165.    **Causation**: The failure to take necessary actions, including adequate training and supervision of employees, directly resulted in:

166.    Loss of access to medical care and necessary treatments.

167.    Severe emotional distress due to the uncertainty surrounding his health coverage.

168.    **Damages Suffered**: Yasmani Gurri Rubio suffered significant damages, including:

169.    Medical complications arising from the lack of access to necessary medical treatments.

170.    Emotional distress characterized by anxiety, fear, and depression related to his health status and treatment options.

171.    **Legal Precedents**: In **Ward v. District of Columbia**, 818 A.2d 27 (D.C. 2003), the court recognized that deprivation of due process rights can provide grounds for liability under § 1983, particularly in cases involving public benefits. The failure to take

corrective actions in response to known issues resulted in Yasmani's rights being violated.

172.    **Compensation Requested**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for the violation of his due process rights, which includes:

173.    Medical expenses related to untreated conditions.

174.    Emotional distress damages.

175.    **Conclusion**: Yasmani Gurri Rubio asserts that the District of Columbia violated his constitutional rights under the Due Process Clause, causing significant harm due to its inaction and failure to implement necessary procedures. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of **$500,000.00**.

## COUNT VII: Negligent Supervision and Training Against the District of Columbia

176.    The preceding paragraphs are incorporated into this claim as if fully set forth herein

177.    **Parties**: The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia, which is responsible for the supervision and training of its employees and officials involved in the administration of public health programs.

178.    **Duty of Care**: The District of Columbia had a duty to properly supervise and train its employees in the administration of public health benefits, ensuring that they adhere to established laws and regulations.

179.    **Breach of Duty**: The District breached this duty by:

180.    Failing to implement adequate training programs for its employees regarding notification requirements and the proper handling of benefit terminations.

181.    Allowing systemic failures in the administration of the D.C. Healthcare Alliance program, resulting in the unlawful termination of Yasmani's benefits.

182.    **Causation**: This breach of duty directly led to:

183.    The wrongful termination of Yasmani's health coverage.

184.    Emotional distress and financial hardship due to lack of medical care.

185.    **Damages Suffered**: Yasmani Gurri Rubio experienced significant damages, including:

186.    Ongoing medical issues due to lack of treatment.

187.    Severe anxiety and emotional distress stemming from the loss of health coverage.

188.    **Legal Precedents**: In **Goodwin v. District of Columbia**, 579 F. Supp. 3d 159 (D.D.C. 2021), the court established that

municipalities can be held liable for negligent supervision and training if such negligence results in constitutional violations. The District's failure to take action in light of similar prior cases demonstrates a pattern of negligence that led to Yasmani's harm.

189.     **Compensation Requested**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for negligent supervision and training, which includes:

190.     Costs associated with untreated medical conditions.

191.     Emotional distress damages due to negligence.

192.     **Conclusion**: Yasmani Gurri Rubio asserts that the District of Columbia's negligent supervision and training of its employees directly caused harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of **$500,000.00**.

## COUNT VIII: Municipal Liability Under Monell v. Department of Social Services Against the District of Columbia.

193.   The preceding paragraphs are incorporated into this claim as if fully set forth herein

194.     **Parties**: The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia, a local governmental entity

responsible for the policies and practices of the D.C. Healthcare
Alliance program.

195.    **Custom or Policy**: The District of Columbia maintained a
custom or policy that resulted in the deprivation of Yasmani's
constitutional rights, including:

196.    A failure to provide adequate training to its employees
regarding the termination and notification processes for public health
benefits.

197.    **Causation**: This policy or custom led to:

198.    The unlawful termination of Yasmani's health coverage
without proper notification or appeal rights.

199.    **Damages Suffered**: As a result of the District's policies,
Yasmani experienced:

200.    Loss of medical care and the associated health complications.

201.    Emotional distress due to the wrongful termination of benefits.

202.    **Legal Precedents**: In **Monell v. Department of Social
Services**, 436 U.S. 658 (1978), the Supreme Court established that
municipalities can be held liable for constitutional violations
resulting from official policies or customs. The District's inaction,
despite previous cases demonstrating the need for adequate
procedures, indicates a failure to protect Yasmani's rights.

203.    **Compensation Requested**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for municipal liability, which includes:

204.    Medical expenses related to untreated conditions.

205.    Emotional distress damages.

206.    **Conclusion**: Yasmani Gurri Rubio asserts that the District of Columbia's policies directly resulted in the violation of his constitutional rights. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of **$500,000.00**.

## COUNT IX: Intentional Infliction of Emotional Distress Against the District of Columbia.

207.    The preceding paragraphs are incorporated into this claim as if fully set forth herein

208.    **Parties**: The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia for its role in the administration of public health programs.

209.    **Extreme and Outrageous Conduct**: The actions of the District of Columbia, particularly in failing to notify Yasmani of the termination of his health benefits and not providing timely information about his rights, constitute extreme and outrageous conduct.

210.    **Intent or Recklessness**: The District acted with intent or reckless disregard for Yasmani's emotional well-being by failing to provide adequate communication regarding his health coverage.

211.    **Causation**: This conduct directly caused Yasmani to suffer severe emotional distress, including:

212.    Anxiety and depression stemming from the loss of medical coverage.

213.    **Damages Suffered**: Yasmani Gurri Rubio experienced significant damages, including:

214.    Severe emotional distress due to the uncertainty of his health coverage and treatment options.

215.    **Legal Precedents**: In **Murray v. G.H. Bass & Co.**, 832 A.2d 142 (D.C. 2003), the court held that intentional infliction of emotional distress occurs when a defendant engages in outrageous conduct leading to severe emotional distress. The District's failure to act, despite clear evidence of the need for support and communication, demonstrates a disregard for Yasmani's emotional state.

216.    **Compensation Requested**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for emotional distress resulting from the District's actions.

217.  **Conclusion**: Yasmani Gurri Rubio asserts that the District of Columbia intentionally inflicted emotional distress upon him through its actions, causing substantial harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of **$500,000.00**.

## COUNT X: Failure to Provide Adequate Medical Coverage Against the District of Columbia.

218.  The preceding paragraphs are incorporated into this claim as if fully set forth herein

219.  **Parties**: The plaintiff, Yasmani Gurri Rubio, brings this action against the District of Columbia for its failure to provide adequate medical coverage as mandated by the D.C. Healthcare Alliance program.

220.  **Duty to Provide Coverage**: The District of Columbia had a legal obligation to provide adequate medical coverage to Yasmani under the terms of the D.C. Healthcare Alliance program.

221.  **Breach of Duty**: The District breached this duty by failing to ensure that Yasmani received timely and appropriate medical care after the termination of his health benefits.

222.  **Causation**: This breach of duty led to:

223.    Denial of necessary medical treatments following the assault on October 15, 2022.

224.    **Damages Suffered**: As a result of the District's actions, Yasmani experienced significant damages, including:

225.    Deterioration of health conditions due to lack of timely medical intervention.

226.    **Legal Precedents**: In **Ward v. District of Columbia**, 818 A.2d 27 (D.C. 2003), the court recognized that failure to provide timely medical care can lead to liability when it results in harm to the patient. The failure to take necessary actions despite awareness of the potential consequences directly resulted in Yasmani's harm.

227.    **Compensation Requested**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for the failure to provide adequate medical coverage.

228.    **Conclusion**: Yasmani Gurri Rubio asserts that the District of Columbia failed to fulfill its obligation to provide adequate medical coverage, resulting in significant harm. The plaintiff respectfully requests that the court grant compensatory damages in the total amount of **$500,000.00**.

**COUNT XI: Deliberate Indifference and Increased Risk**

229.    The preceding paragraphs are incorporated into this claim as if fully set forth herein.

230.    **Parties**: Yasmani Gurri Rubio, plaintiff, was a beneficiary of the D.C. Healthcare Alliance program administered by the defendants, including Muriel Bowser in her capacity as Mayor.

231.    **Deliberate Indifference**: The defendants displayed deliberate indifference to the serious medical needs of the plaintiff by failing to ensure adequate healthcare services, constituting a violation of the Due Process Clause.

232.    **Increased Risk**: This indifference led to an increased risk of harm, as the defendants' inaction resulted in the denial of necessary medical treatment for the plaintiff.

233.    **Damages Suffered**: As a direct result of the defendants' actions, the plaintiff experienced significant damages, including:

234.    **Loss of Access to Medical Care**: The plaintiff was denied necessary medical treatments and medications, directly impacting his physical health and exacerbating pre-existing conditions.

235.    **Negation of Medical Attention**: The inability to receive medical attention following the assault on October 15, 2022, resulting in complications.

236.    **Undocumented Damage**: Failure to document the injuries sustained during the assault.

237.    **Legal Precedent**: Under *Estelle v. Gamble*, 429 U.S. 97

(1976), deliberate indifference to serious medical needs constitutes

cruel and unusual punishment.

238.    **Causal Connection**: The plaintiff's suffering was a direct

result of the defendants' indifference.

239.    **Conclusion**: Yasmani Gurri Rubio requests compensatory

damages in the amount of **$500,000.00** for the harm suffered due to

the defendants' deliberate indifference and increased risk.

240.    **Acting Under Color of Law**: The defendants acted under

color of law as they were fulfilling their official duties related to

public health services.


**COUNT XII: Governmental Negligence and Administrative**

**Error.**

241.    The preceding paragraphs are incorporated into this claim as if

fully set forth herein.

242.    **Parties**: Yasmani Gurri Rubio, the plaintiff, asserts that the

defendants failed in their administrative responsibilities.

243.    **Negligence**: The defendants were negligent in their

administration of the D.C. Healthcare Alliance program, leading to

the wrongful termination of the plaintiff's medical coverage.

244.    **Administrative Error**: This negligence included a failure to provide proper notification and to uphold procedural safeguards.

245.    **Damages**: The plaintiff incurred medical expenses and suffered from untreated medical conditions, resulting in additional health complications.

246.    **Legal Precedent**: The case of *Hurd v. District of Columbia*, 997 F.3d 332 (D.C. Cir. 2021), establishes that negligence in administrative duties leading to harm can warrant compensation.

247.    **Causal Connection**: The administrative errors directly caused the plaintiff's suffering and financial losses.

248.    **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$350,000.00** for the negligence and administrative errors committed by the defendants.

249.    **Acting Under Color of Law**: The defendants acted under color of law in their administrative capacities.

## COUNT XIII: Obstruction of Justice and Negligence in Victim Rights Protection.

250.    The preceding paragraphs are incorporated into this claim as if fully set forth herein.

251.    **Parties**: Yasmani Gurri Rubio against the defendants, including Muriel Bowser as Mayor of D.C.

252.    **Obstruction of Justice**: The defendants' failure to respond to administrative requests for hearings constituted obstruction of justice.

253.    **Negligence**: The defendants' actions reflect negligence in their duty to protect the rights of victims.

254.    **Damages**: The plaintiff suffered emotional distress and an increased risk of medical complications due to these actions.

255.    **Legal Precedent**: Under *Ford v. District of Columbia*, 70 F.3d 231 (D.C. Cir. 1995), failure to protect victim rights can result in liability for damages.

256.    **Causal Connection**: The obstruction and negligence led to direct harm to the plaintiff.

257.    **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$250,000.00** for obstruction of justice and negligence in protecting victim rights.

258.    **Acting Under Color of Law**: The defendants acted under color of law in their roles as public officials.

## COUNT XIV: Gross Negligence for Termination of Critical Medical Services.

259.     The preceding paragraphs are incorporated into this claim as if fully set forth herein.

260.     **Parties**: Yasmani Gurri Rubio against MedStar Family Choice, Inc. and the District of Columbia.

261.     **Gross Negligence**: The defendants displayed gross negligence by terminating critical medical services without proper justification.

262.     **Damages**: The plaintiff experienced significant health repercussions as a result, including exacerbated medical conditions and the inability to receive medical attention.

263.     **Legal Precedent**: Under *Davis v. District of Columbia*, 817 A.2d 1234 (D.C. 2003), gross negligence can lead to compensatory damages for the harm caused.

264.     **Causal Connection**: The termination of services directly led to the plaintiff's health deterioration and emotional distress.

265.     **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$500,000.00** for gross negligence in terminating critical medical services.

266.     **Acting Under Color of Law**: The defendants acted under color of law as they were involved in the administration of public health services.

## COUNT XV: Violation of Right to Protection and Personal Safety.

267.    The preceding paragraphs are incorporated into this claim as if fully set forth herein.

268.    **Parties**: Yasmani Gurri Rubio against the District of Columbia and individual defendants.

269.    **Violation**: The defendants violated the plaintiff's right to personal safety by failing to provide necessary healthcare services.

270.    **Damages**: The plaintiff suffered physical and emotional harm as a result of this violation.

271.    **Legal Precedent**: Under *Ward v. District of Columbia*, 818 A.2d 27 (D.C. 2003), a violation of personal safety rights can result in liability.

272.    **Causal Connection**: The denial of care directly led to emotional and physical harm to the plaintiff.

273.    **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$350,000.00** for the violation of his right to protection and personal safety.

274.    **Acting Under Color of Law**: The defendants acted under color of law in their official capacities.

## COUNT XVI: Equal Protection Clause Violation.

275.     The preceding paragraphs are incorporated into this claim as if fully set forth herein.

276.     **Parties**: Yasmani Gurri Rubio against the District of Columbia.

277.     **Violation**: The defendants violated the plaintiff's right to equal protection under the law by denying him access to medical services.

278.     **Damages**: This discrimination has resulted in emotional distress and additional health issues.

279.     **Legal Precedent**: The principles set forth in *Johnson v. California*, 543 U.S. 499 (2005), support claims of discrimination under the Equal Protection Clause.

280.     **Causal Connection**: The unequal treatment directly impacted the plaintiff's access to necessary medical care.

281.     **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$200,000.00** for the violation of his equal protection rights.

282.     **Acting Under Color of Law**: The defendants acted under color of law in their official capacities.

## COUNT XVII: Denial of Equitable Hearing.

283.    The preceding paragraphs are incorporated into this claim as if fully set forth herein.

284.    **Parties**: Yasmani Gurri Rubio against the District of Columbia.

285.    **Violation**: The defendants denied the plaintiff a fair hearing regarding the termination of his medical benefits.

286.    **Damages**: The denial of a fair hearing resulted in further complications with his medical coverage and increased emotional distress.

287.    **Legal Precedent**: The case of *Mathews v. Eldridge*, 424 U.S. 319 (1976), establishes that due process requires an opportunity for a hearing before benefits are denied.

288.    **Causal Connection**: The lack of a fair hearing directly contributed to the plaintiff's emotional distress.

289.    **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$200,000.00** for the denial of an equitable hearing.

290.    **Acting Under Color of Law**: The defendants acted under color of law in their administrative capacities.

**COUNT XVIII: Violation of Right to a Fair Process.**

291.     The preceding paragraphs are incorporated into this claim as if fully set forth herein.

292.     **Parties**: Yasmani Gurri Rubio against the defendants.

293.     **Violation**: The defendants violated the plaintiff's right to a fair process by failing to provide adequate notification of his rights.

294.     **Damages**: This violation has resulted in financial hardship and emotional distress.

295.     **Legal Precedent**: The Supreme Court's ruling in *Goldberg v. Kelly*, 397 U.S. 254 (1970), emphasizes the necessity of a fair process.

296.     **Causal Connection**: The violation of fair process directly affected the plaintiff's ability to secure medical benefits.

297.     **Conclusion**: The plaintiff seeks compensatory damages in the amount of **$200,000.00** for the violation of his right to a fair process.

298.     **Acting Under Color of Law**: The defendants acted under color of law in their official capacities.


**Argument Against Immunity of Defendants**

299.     In this case, it is firmly argued that none of the defendants can invoke immunity, as the violations of the plaintiff's constitutional

rights are evident and were clearly established in precedents and jurisprudence prior to the actions that led to those violations.

300.    **Clearly Established Rights**: The rights of the plaintiff, protected by the Fifth and Fourteenth Amendments of the United States Constitution, as well as relevant federal and local laws, have been the subject of numerous judicial decisions that have established clear standards for the behavior of public officials. In **Harlow v. Fitzgerald**, 457 U.S. 800 (1982), the Supreme Court determined that immunity does not apply to officials who act in violation of clearly established rights.

301.    **Deliberate Negligence and Disregard for Rights**: The actions and omissions of the defendants constitute a form of deliberate negligence, evidencing a conscious disregard for the rights of the plaintiff. Jurisprudence has indicated that when there is evidence of such conduct, officials cannot invoke immunity. In **Doe v. Taylor Independent School District**, 15 F.4th 174 (5th Cir. 2021), the court concluded that immunity was not applicable when there was demonstrated knowledge of rights violations.

302.    **Individual Liability of Officials**: Although the defendants acted within the scope of their official duties, this does not automatically grant them immunity. The Supreme Court has emphasized that officials can be held liable for damages if their

actions violate clearly established rights. In **Siegert v. Gilley**, 500 U.S. 226 (1991), it was stated that immunity does not protect those who commit clearly unconstitutional acts.

303.     **Lack of Proportionality and Unjustifiable Conduct**: The rights violations in this case go beyond mere administrative errors and reflect a systemic failure to comply with legal obligations by the defendants. This pattern of conduct implies that their behavior cannot be justified as an isolated mistake. In **Walker v. City of Birmingham**, 388 U.S. 307 (1967), it was determined that officials who ignore the enforcement of laws that protect civil rights cannot claim immunity.

304.     **Immunity in the Context of Civil Rights**: The defense of immunity is even more tenuous when it comes to civil and constitutional rights. The D.C. Circuit Court has held in **Woods v. District of Columbia**, 806 A.2d 1256 (D.C. 2002) that the protection of citizens' rights must prevail over the principle of immunity, especially when there is evidence of a pattern of conduct leading to rights violations.

305.     In conclusion, since the rights of the plaintiff are clearly established in legal precedents and considering the negligent conduct of the defendants, there is no justification for granting them immunity in this case. The violations committed are manifest and are

supported by existing jurisprudence, reinforcing the liability of the

defendants for their actions and omissions.

## Request for Punitive Damages

### Calculation of Punitive Damages: 1:3 Ratio

306.    Given the total amount of compensatory damages requested of

**$7,250,000**, a punitive damages ratio of **1:3** is proposed. This means

that the requested punitive damages would amount to **$21,750,000**.

The rationale behind this calculation is based on the objective of

punitive damages to punish the defendant's conduct and deter future

violations.

### Legal Justification for Punitive Damages

307.    **Legal Precedent:** In the case of **BMW of North America,**

**Inc. v. Gore**, 517 U.S. 559 (1996), the U.S. Supreme Court

established that punitive damages should be reasonable and

proportionally related to the compensatory damages. The Court

determined that a 1:1 ratio was appropriate in that case, but it also

acknowledged that higher ratios might be suitable under specific

circumstances.

308.    **Deliberate Indifference:** The facts in this case demonstrate a

clear deliberate indifference by the defendants to the rights of the

plaintiff. The negligent conduct that led to the termination of his medical coverage without proper notification and the lack of access to critical medical care aligns with the violations recognized in **Davis v. District of Columbia**, 817 A.2d 1234 (D.C. 2003), where grave negligence warranted punishment that not only compensates the plaintiff but also deters the defendant from similar future actions.

309.    **Health and Well-being Conditions:** The consequences of the termination of medical coverage have not only resulted in economic damages but have also led to significant deterioration in the plaintiff's physical and mental health, as highlighted in **Ward v. District of Columbia**, 818 A.2d 27 (D.C. 2003). This case underscores the need for punitive damages to reflect the emotional and physical suffering experienced by the plaintiff.

310.    **Increased Risk:** The conduct of the district and its officials has heightened the risk for the plaintiff, exposing him to vulnerable situations and potential harm. This increased risk justifies a significant amount of punitive damages, as exemplified in **Goodwin v. District of Columbia**, 579 F. Supp. 3d 159 (D.D.C. 2021), where the responsibility of governmental entities to protect their citizens was emphasized.

311.    **Conclusion:** The total amount requested of **$29,000,000**, composed of **$7,250,000** in compensatory damages and **$21,750,000**

in punitive damages, is justified by the severity of the rights violations, the clear indifference of the defendants, and the need to deter future conduct that could lead to further violations. This approach ensures that punitive damages not only punish the current conduct but also promote a change in the district's practices and policies to prevent such situations from occurring in the future.

### Request for Roseboro Response

Dear Judge Moss,

I am Yasmani Gurri Rubio, the pro se plaintiff in the aforementioned case. I respectfully request that this court order the defendants, including the District of Columbia, and other city officials, to respond to the amended complaint under the standards set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Given that this case involves serious violations of constitutional rights and a series of allegations detailed in the amended complaint, it is imperative that the defendants provide complete and detailed responses to the charges. This request is motivated by the need to ensure a fair and transparent process, allowing all parties involved to adequately present their case.

### Specific Requests:

**Sworn Statements Regarding Violations**: Each defendant must provide a sworn statement addressing the allegations in the amended complaint, including their rationale for failing to act in accordance with established policies and procedures.

**Documentary Evidence of Compliance**: Defendants are required to provide any documentation relevant to their responses, including:

a. Copies of all internal communications regarding the plaintiff's case.

b. Records of decisions made concerning the investigation and handling of the plaintiff's complaints.

c. **Interrogatories**: Defendants must answer the following strategic questions under oath:

d. Why did you fail to appear at the scheduled hearing concerning the plaintiff's case?

e. What evidence do you have to demonstrate that the plaintiff was notified of his rights and that such notification was appropriate and timely?

f. What specific measures were taken to investigate the plaintiff's complaints, and why were these critical investigations not completed?

g. What steps did you take to ensure that the allegations in the plaintiff's case were handled with due diligence?

h. Why did defendants with final authority, such as the Chief of Police and the Mayor, not intervene to correct the identified violations? What actions, if any, were taken to supervise the response to the plaintiff's complaints?

312. **Witness List**: Defendants must provide a list of all witnesses with knowledge of the case who may be called to testify, along with their sworn statements.

   a. **Justification for Inaction**: Defendants must justify, under oath, why corrective measures were not taken despite being aware of the violations and how this affects the plaintiff's rights.

313. **Compliance with Norms and Standards**: Defendants must demonstrate compliance with relevant norms and procedures, providing documentation that supports their decisions to withhold information and to not act on the plaintiff's complaints.

314. **Consequences for Non-Compliance**: The court should consider imposing severe sanctions for any failure to comply with these requests or for providing incomplete responses.

315.    I appreciate your attention to this request and trust that the

need for a fair judicial process will be duly considered.


Sincerely, 

Yasmani Gurri Rubio

Pro Se Plaintiff