UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YASMANI GURRI RUBIO,

*Plaintiff*,

v.                                                          Civil Action No. 23-719 (RDM)

DISTRICT OF COLUMBIA, *et al.*,

*Defendants.*

**MEMORANDUM OPINION**

Now before the Court is *pro se* Plaintiff Yasmani Gurri Rubio's motion for leave to file a

second amended complaint, Dkt. 70, the District of Columbia's opposition, Dkt. 73, and

Plaintiff's reply, Dkt. 76. Plaintiff's proposed complaint marks his fourth attempt to plead his

claims. For the reasons explained below, the Court will deny Plaintiff's motion for leave to file

an amended complaint, will resolve a host of additional motions that Plaintiff has filed,[1] and will

enter final judgment in favor of Defendants.

**I.**

The Court has previously set forth the factual and procedural background relevant to

Plaintiff's motion. *See* Dkt. 47 at 2–9, Dkt. 67 at 1–2. In brief, Plaintiff brings this action

against the District of Columbia and three official capacity defendants: D.C. Mayor Muriel

---

[1] These include Plaintiff's motion for leave to appeal, Dkt. 54, motion for certificate of
appealability, Dkt. 55, motion for contempt against the Court and the District of Columbia, Dkt.
56, motion for protective order, Dkt. 58, motion for recusal, Dkt. 59, motion for contempt, Dkt.
60, motion for certification for interlocatory [*sic*] appeal, Dkt. 61, motion for leave to appeal,
Dkt. 62, motion for writ of mandamus, Dkt. 64, motion for sanctions, Dkt. 68, motion for
protective order, Dkt. 69, motion to expedite, Dkt. 77, motion for hearing, Dkt. 80, motion to
transfer, Dkt. 82, and motion to withdraw pending motions, Dkt. 83.

Bowser, Laura Green Zeilinger, Director of the D.C. Department of Human Services ("DHS"),

and Wayne Turnage, Director of the D.C. Department of Health Care Finance. Dkt. 13-2 at 2–3

(FAC). Plaintiff's claims generally arise from Defendants' alleged unlawful termination of his

D.C.-provided health insurance.

Several months after filing his initial complaint, the Court granted Plaintiff's motion for

leave to file an amended complaint. Min. Entry (Nov. 29, 2023); Dkt. 13-2. The District of

Columbia then moved to dismiss Plaintiff's amended complaint. Dkt. 22. In response, Plaintiff

filed an opposition and a motion for leave to file a second amended complaint, among other

motions. Dkts. 25, 38. The Court ultimately granted the District's motion to dismiss and denied

Plaintiff's motion for leave to file a second amended complaint without prejudice. Dkt. 47 at

18.[2]

In denying Plaintiff's motion to amend his complaint, the Court reasoned that although

Plaintiff's proposed complaint was deficient, "Plaintiff's arguments merit[ed] further

exploration—and, if appropriate, further development—with the assistance of counsel." *Id.* at

28. The Court, accordingly, "appoint[ed pro bono] counsel to represent Plaintiff" and, in

particular, to assess "whether there is a good faith basis to continue to pursue [Plaintiff's] case in

federal district court," including "whether to file a subsequent motion for leave to amend"

Plaintiff's complaint. *Id.* at 28–29. Shortly thereafter, court-appointed pro bono counsel

---

[2] Of the defendants named in Plaintiff's complaint, Dkt. 13-2, the District of Columbia is the
only one to have entered a formal appearance, Dkt. 18, and it is unclear whether the individual
District officials were ever properly served, *see* Dkt. 7 at 3. This uncertainty is immaterial,
however, for two reasons. First, the District's filings affirmatively address Plaintiff's claims
against both the District and the individual defendants. *See* Dkt. 39 at 6–10; Dkt. 73 at 11–12
(arguing that qualified immunity would bar Plaintiff's claims against District officials). Second,
as explained below, *see infra* n.7, Plaintiff's claims against the individual defendants are so
lacking in merit that *sua sponte* dismissal is, in any event, warranted.

appeared on Plaintiff's behalf.  *See* Dkts. 52, 53.  But Plaintiff declined representation and

elected to continue *pro se*.  *See* Dkt. 57 at 2.

**II.**

Plaintiff then filed a series of motions, some of which evinced a desire to appeal his case.

*See, e.g.*, Dkt. 61 (motion for certification for interlocutory appeal); Dkt. 62 (motion for leave to

appeal).  The Court, however, had dismissed Plaintiff's operative complaint and denied his

motion for leave to file a second amended complaint without prejudice.  Dkt. 47.  Because there

was no operative complaint, the Court issued an order giving Plaintiff a choice:  Plaintiff could

either renew his motion for leave to file a second amended complaint, or the Court could enter

final judgment in favor of the District of Columbia, thereby allowing Plaintiff to appeal.  Dkt. 67

at 4.  Several hours after the Court issued its order, Plaintiff filed a proposed second amended

complaint, which the Court construes as a motion for leave to file a second amended complaint.

*See* Min. Order (Oct. 28, 2024); Dkt. 70.  Because Plaintiff declined the Court's offer to enter

final judgment and, instead, sought leave to file a second amended complaint, the Court will

deny Plaintiff's motions for leave to appeal, Dkt. 54, for a certificate of appealability, Dkt. 55,

for certification for interlocutory appeal, Dkt. 61, and for leave to appeal, Dkt. 62.[3]  At the time

Plaintiff filed these motions, the Court had yet to enter final judgment, *see* 28 U.S.C. § 1291, and

Plaintiff failed to identify any "controlling question of law as to which there is substantial found

for difference of opinion," *id.* § 1292(b).

Plaintiff has also—once again—renewed his motion for recusal, Dkt. 59, and has—

adding a new twist—moved for transfer to "a district court in Florida" "due to judicial bias,

---

[3] The Court will also deny Plaintiff's petition for a writ of mandamus, Dkt. 64, which he
apparently incorrectly filed in this Court rather than in the Court of Appeals.

retaliation, and lack of impartiality," Dkt. 82 at 1, 5.  In support of those motions, Plaintiff points

to the Court's notification of counsel for the District of Columbia Department of Human

Services that a default judgment had been entered against it and to the Court's decision to set

aside that judgment after the District appeared.  The Court has previously explained why recusal

is not warranted under these circumstances, and it need not repeat that explanation here.  *See*

Dkt. 47 at 31; Dkt. 67 at 3 n.4.  Suffice it to say that litigation is not a game of gotcha in which a

plaintiff is entitled to an unyielding default judgment, when little time has passed since the suit

was filed, the delay has not caused the plaintiff undue prejudice, the defendant stands ready to

defend the suit, and the complaint fails to state a claim upon which relief can granted—and this

is particularly so when the court is responsible for effecting service of process on behalf of a *pro*

*se* plaintiff, and it is unclear whether the allegedly defaulting defendant has received actual

notice of the suit or of the Clerk's entry of default.[4]  The Court, accordingly, will deny Plaintiff's

renewed motion for recusal and motion to transfer.

Plaintiff also filed a motion to expedite, Dkt. 77, and a motion for a hearing, Dkt. 80, but

subsequently filed an emergency motion to withdraw the two motions, Dkt. 83.  The Court will

grant that motion and will treat Plaintiff's motion to expedite and motion for a hearing as

withdrawn.  And the Court will deny Plaintiff's motion for sanctions against Defendants, Dkt.

---

[4] For similar reasons, the Court will also deny Plaintiff's two motions to hold the Court in
contempt, which repeat his allegations of bias, assert that the Court abused its discretion by
appointing pro bono counsel, and unjustifiably denied Plaintiff's request the Court sanction
Defendants' counsel, Dkts. 56, 60, and his two motions for protective orders, which ask that the
Court re-enter the default against Defendants, revoke its Memorandum Opinion of July 12, 2024,
"ensure that Plaintiff receives fair and impartial treatment in all future proceedings related to this
case," reimburse Plaintiff for "legal fees, travel expenses, administrative costs, and other related
expenses that have been unnecessarily burdened on Plaintiff due to the Court's actions or
inactions," and "appoint a neutral third party . . . to oversee any future actions or proceedings in
this case," Dkt. 58 at 17–19; Dkt. 69.

68, which itself fails to comply with Federal Rule of Civil Procedure 11 and which, in any event, fails to identify any sanctionable misconduct.

**III.**

This, then, brings the Court to the only substantial question presented—that is, whether the Court should grant Plaintiff leave to file a second amended complaint.  In his proposed second amended complaint, Dkt. 70, Plaintiff now advances eighteen federal and state law claims against the District of Columbia; Mayor Muriel Bowser; Wayne Turnage, Director of the Department of Health Care Finance (DHCF); an unnamed "Manager of the D.C. Healthcare Alliance Program;" an unnamed "Eligibility Review Supervisor at DHCF;" an unnamed "Director of the Economic Security Administration at DHS"; an unnamed Case Management Supervisor at DHS; and MedStar Family Choice, Inc.  Dkt. 70 at 1.

After a party has amended its complaint "once as a matter of course" pursuant to Rule 15(a)(1), the party may further amend only "with the opposing party's written consent or the court's leave."  Fed R. Civ. P. 15(a)(2).  Although courts "should freely give leave [to amend] when justice so requires," *id.*, courts should consider, among other things, "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," *Mahon v. Anesthesia Bus. Consultants, LLC*, 2016 WL 1452333, at *9 (D.D.C. Apr. 13, 2016) (quoting *Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 344 (D.C. Cir. 1997)).  The Court "may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

A.      **Federal Claims**

After reviewing Plaintiff's proposed second amended complaint, the Court concludes that

amendment would be futile because Plaintiff failed to cure the deficiencies that the Court

previously identified.  As relevant here, Plaintiff's prior proposed complaint asserted claims

against the District under 42 U.S.C § 1983.  *See* Dkt. 38-2 at 40 (Prior Proposed SAC ¶¶ 123–

24).  Plaintiff advanced a *Monell* theory of liability based on the District's termination of his

medical benefits.  *See* Dkt. 47 at 21.  As the Court's prior opinion explained, however, *Monell*

requires both a predicate constitutional violation in Plaintiff's case *and* "a pattern of similar

constitutional violations" in other cases.  Dkt. 47 at 21 (quoting *Hurd v. District of Columbia*,

997 F.3d 332, 338 (D.C. Cir. 2021)).  Plaintiff's prior proposed amended complaint failed in this

respect because it "d[id] not identify *any* similar incident preceding the termination of his

medical benefits." *Id.* (emphasis in original).[5]  Plaintiff attempted to show prior similar incidents

by pointing to various federal and state court decisions from the District of Columbia, but none

of those cases addressed conduct that was "'facially similar' to the predicate violations that

Plaintiff allege[d]." *Id.* at 22.  The Court also rejected Plaintiff's claims directed at the

individual capacity defendants.  As the Court explained, Plaintiff was required to "plead that

each Government-official defendant, through the official's *own individual actions*, has violated

the Constitution."  Dkt. 47 at 24 (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

676 (2009)).  Aside from a few conclusory allegations, Plaintiff did not "allege[] that any of the

---

[5] Plaintiff's prior complaint relied on an additional *Monell* theory, under which a municipality can be held liable for the unconstitutional action of "a policy maker within the government." Dkt. 47 at 23 (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). This theory does not require pleading a pattern of constitutional violations, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988), but Plaintiff's proposed second amended complaint does not appear to raise it.

individual capacity Defendants was 'personally involved in the illegal conduct.'"  *Id.* at 25

(quoting *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997)).

Plaintiff's proposed second amended complaint suffers from these same defects.  As for

Plaintiff's *Monell* claims against the District, Plaintiff alleges, as before, that the District violated

the Due Process and Equal Protection Clauses by "[f]ailing to provide adequate notice regarding

the termination of his health benefits" and "[d]enying him the opportunity to appeal" or have a

hearing on the termination of his benefits.  Dkt. 70 at 40 (Proposed SAC ¶¶ 163–64); *see also id.*

at 44, 49, 55–57 (Proposed SAC ¶¶ 196, 230, 277, 284, 293).  But Plaintiff fails to make any

non-conclusory allegation that the District has engaged in a pattern of arbitrarily canceling

residents' healthcare without proper notification and denying those residents' appeals or

hearings.  *See, e.g.*, Dkt. 70 at 7 (Proposed SAC ¶ 13) (alleging that Plaintiff's case "is not an

isolated incident but reflects a systematic pattern of conduct").  As in his prior proposed second

amended complaint, *see* Dkt. 38-2 at 22–24 (Prior Proposed SAC ¶¶ 57–61), Plaintiff attempts to

meet this requirement by pointing to a host of federal and state decisions purporting to involve

*Monell* claims against the District, *see* Dkt. 70 at 8–12 (Proposed SAC at ¶¶ 13–31).  But, again,

these cases cannot establish a "widespread practice or custom" of the unconstitutional conduct

Plaintiff alleges.  *Hurd*, 997 F.3d at 338.  To the extent the District was even held liable in the

cases Plaintiff cites, they addressed conduct that "bear[s] little resemblance" to this case.  *Id.*;

*see, e.g.*, Dkt. 70 at 11 (Proposed SAC at ¶ 25) (citing *Goodwin v. District of Columbia*, 579 F.

Supp. 3d 159, 162 (D.D.C. 2021), which addressed protesters' First and Fourth Amendment

*Monell* claims against the District).

Moreover, many of the cases that Plaintiff cites appear to have been invented by artificial

intelligence ("AI").  Plaintiff apparently used AI to draft his proposed complaint, which bears

some of the hallmarks of an AI response to a user's inquiry.  For example, following a list of

seemingly fabricated cases,[6] Plaintiff's proposed complaint states:  "This case supports your

argument that MedStar's failure to inform you about your coverage cancellation and your rights

constitutes a violation of patient protection laws."  Dkt. 70 at 10 (Proposed SAC ¶ 22).  The

complaint continues:  "Here are some relevant legal precedents from the District of Columbia

that can help establish the non-isolated nature of the conduct in your case."  *Id.* at 11 (Proposed

SAC ¶ 24).  To be sure, there is no prohibition on using AI in this District, and the Court

appreciates that it may be a valuable tool for *pro se* litigants in particular.  Nonetheless, all

litigants have an obligation to comply with Rule 11, which imposes an affirmative duty to

conduct a "reasonable [inquiry]" into the substance of a filing before it is presented to the Court,

including verifying that every citation is real.  Fed. R. Civ. P. 11(b)(2); *accord Mata v. Avianca,*

*Inc.*, 678 F. Supp. 3d 443, 460 (S.D.N.Y. 2023).  The failure to do so is an "abuse of the judicial

system," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990), leading some courts to

impose Rule 11 sanctions for the improper use of AI assistance, *see, e.g.*, *Mata*, 678 F. Supp. 3d

at 466.

Next, construing Plaintiff's proposed second amended complaint liberally, Plaintiff

appears to assert essentially the same § 1983 claims under the Due Process and Equal Protection

Clauses against the individual defendants and MedStar Health (a private corporation).  *See* Dkt.

70 at 48–50 (Proposed SAC ¶¶ 229–40) (defendants "fail[ed] to ensure adequate healthcare

services, constituting a violation of the Due Process Clause"); *id.* at 55 (Proposed SAC ¶¶ 275-

---

[6] The Court is unable to locate *Ford v. District of Columbia*, 70 F.3d 231 (D.C. Cir. 1995), *Davis v. District of Columbia*, 817 A.2d 1234 (D.C. 2003), *Ward v. District of Columbia*, 818 A.2d 27 (D.C. 2003), or *Reese v. District of Columbia*, 37 A.3d 232 (D.C. 2012).  Dkt. 70 at 9, 10, 52 (Proposed SAC at ¶¶ 18, 19, 21, 22, 23, 255).

82) (equal protection); *id.* at 55–57 (Proposed SAC ¶¶ 283–98) (defendants "denied the plaintiff

a fair hearing regarding the termination of his medical benefits" and "fail[ed] to provide adequate

notification of his rights"). These allegations, however, cannot sustain any § 1983 claim against

either the individual defendants or MedStar.

With respect to the individuals, Plaintiff's newest proposed complaint again fails to

include any non-conclusory allegation that the individuals did anything at all, let alone

allegations that, through their "*own individual actions*," they "violated the Constitution." Dkt.

47 at 24 (emphasis in original) (quoting *Iqbal*, 556 U.S. at 676). Plaintiff's claim, for example,

that Mayor Bowser (along with the other defendants) "administered" D.C. Healthcare Alliance

does not suffice. Dkt. 70 at 49 (Proposed SAC ¶ 230). Plaintiff's constitutional claims against

MedStar fare no better. Even assuming MedStar can be held liable for unconstitutional conduct

as a state actor, MedStar would be subject to the same municipal liability standards as the

District. *See Jordan v. District of Columbia*, 949 F.Supp.2d 83, 90 (D.D.C. 2013). And, again,

Plaintiff fails adequately to allege a "pattern" of similar constitutional violations by MedStar.

Like his claims against the District, Plaintiff attempts to support his claim that MedStar engaged

in "a troubling pattern" of violations by citing numerous state and federal decisions. Dkt. 70 at 9

(Proposed SAC ¶¶ 17–19). As explained above, however, these cases either involved

constitutional violations that bear no resemblance to Plaintiff's claims, did not involve any

constitutional violations, or appear to be miscited or invented.

**B.     D.C. Law Claims**

Plaintiff also asserts numerous D.C. statutory and common law claims against

Defendants. Dkt. 70 at 30–54 (Proposed SAC ¶¶ 99–274). As to those claims, Plaintiff seeks to

invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, which permits the

Court to hear state law claims that "form part of the same case or controversy" as the federal

claims.  28 U.S.C. § 1367(a).  Supplemental jurisdiction, however, is "a doctrine of discretion."

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  A court may "decline to

exercise supplemental jurisdiction" when, for example, "the claim raises a novel or complex

issue of State law;" "the claim substantially predominates over the claim or claims over which

the district court has original jurisdiction;" or "the district court has dismissed all claims over

which it has original jurisdiction."  28 U.S.C. § 1367(c).  Courts should consider, moreover,

"judicial economy, convenience and fairness to litigants."  *Gibbs*, 383 U.S. at 726.  Here, not

only has the Court concluded that granting Plaintiff leave to amend his federal claims would be

futile, but twelve of the eighteen counts in Plaintiff's proposed second amended complaint arise

under D.C. law.  The Court, accordingly, declines to exercise supplemental jurisdiction to

consider the viability of Plaintiff's proposed state law claims.

## IV.

The only remaining question is how to resolve this matter.  The Court previously

dismissed Plaintiff's operative complaint, Dkt. 47 at 32, but did not dismiss the underlying case,

*see Ciralsky v. Central Intelligence Agency*, 355 F.3d 661, 666–67 (D.C. Cir. 2004)

(distinguishing between dismissal of a complaint without prejudice, which is not appealable, and

dismissal of the case, which is appealable whether dismissed with or without prejudice).

Dismissal of a case with prejudice may be warranted where a plaintiff is given multiple

opportunities to amend his complaint, yet repeatedly fails to state a claim.  *See Brown v.*

*Washington Metro. Area Transit Auth.*, 164 F. Supp. 3d 33, 35 (D.D.C. 2016).  At this juncture,

in light of Plaintiff's repeated failures adequately to plead his claims, the Court will dismiss

Plaintiff's federal law claims with prejudice.  The Court expresses no view, however, about the

merits of Plaintiff's D.C. law claims, over which the Court simply declines jurisdiction.[7]

## CONCLUSION

Plaintiff's motion for leave to file a second amended complaint, Dkt. 70, will be denied.

The Court will dismiss Plaintiff's federal claims with prejudice for failure to state a claim and

will decline to exercise supplemental jurisdiction over his D.C. law claims, which the Court will

dismiss without prejudice.

The Court will also deny Plaintiff's motion for leave to appeal, Dkt. 54, motion for

certificate of appealability, Dkt. 55, motion for contempt against the Court and the District of

Columbia, Dkt. 56, motion for protective order, Dkt. 58, motion for recusal, Dkt. 59, motion for

contempt, Dkt. 60, motion for certification for interlocutory appeal, Dkt. 61, motion for leave to

appeal, Dkt. 62, motion for writ of mandamus, Dkt. 64, motion for sanctions, Dkt. 68, motion for

protective order, Dkt. 69, and motion to transfer, Dkt. 82.  The Court will grant Plaintiff's motion

to withdraw pending motions, Dkt. 83, and will treat his motion to expedite, Dkt. 77, and motion

for hearing, Dkt. 80, as withdrawn.

A separate order shall issue.

---

[7] Although it is unclear whether the individual defendants have appeared in the case, *see supra* n.2, the Court may nonetheless *sua sponte* dismiss the claims against them pursuant to Rule 12(b)(6).  *See, e.g.*, *Pricer v. Deutsche Bank*, 842 F. Supp. 2d 162, 166–68 (D.D.C. 2012) (dismissing claims against appearing defendants on their motion and dismissing claims against non-appearing defendants *sua sponte*); *Moore v. Motz*, 437 F.Supp.2d 88, 94 (D.D.C. 2006) (dismissing complaint against non-appearing defendants *sua sponte* (citing *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994)).

          /s/ Randolph D. Moss
         RANDOLPH D. MOSS
       United States District Judge

Date:  December 3, 2024